178 P.3d 635

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kelly B. WAKEFIELD, Defendant–Appellant.**

No. 33295.

Court of Appeals of Idaho.

Oct. 9, 2007.

Rehearing Denied Nov. 15, 2007.

Review Denied March 5, 2008.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Kelly B. Wakefield appeals from the district court's order modifying Wakefield's probation conditions by increasing his monthly restitution payments. For the reasons set forth below, we reverse.

## I.

## FACTS AND PROCEDURE

In 2003, Wakefield pled guilty grand theft. I.C. § 18–2403(1), 18–2407(1)(b)(2), 18–204. The district court sentenced Wakefield to a unified term of four years, with a minimum period of confinement of two years, but suspended the sentence and placed Wakefield on probation.

According to the judgment of conviction, Wakefield was placed on supervised probation for a period of three years. As a condition of probation, Wakefield agreed to pay restitution. The total of amount of restitution was left open for ninety days so that the victim could provide information regarding his losses. After a hearing concerning the victim's losses, the district court entered an order requiring Wakefield to pay restitution pursuant to I.C. § 19–5304 in the amount of $50,157.73. The district court did not, however, set forth a minimum monthly payment schedule but, rather, ordered that the rate of payment was to be determined within the discretion of Wakefield's probation officer. A separate restitution order and civil judgment was then entered against Wakefield in

May 2004. Apparently Wakefield was also required by his probation officer to provide a sworn statement of his financial status twice a year. In August, Wakefield's probation officer filed a letter with the district court requesting that Wakefield be placed on unsupervised probation. Specifically, Wakefield's probation officer informed the district court that "if Mr. Wakefield was to receive unsupervised probation he would be able to apply the Cost of Supervision Fee to restitution and would pay at a minimum $200 a month in restitution."[1] The district court changed Wakefield's probation to unsupervised "Court probation."

In March 2006, the state filed a motion for probation violation alleging that Wakefield's probation should be revoked because he had missed January's monthly payment, and the state doubted that his letter with pay stubs "would satisfy as a sworn statement." Wakefield countered by arguing that he had submitted double payments in March and in June "in anticipation of having limited hours available to him in order to earn his restitution money in the month of January" and, therefore, was still one payment ahead of schedule. Wakefield also argued that nowhere in the restitution order did it say he was precluded from submitting payments in advance. Wakefield requested that the district court "just put him back on probation and allow him to keep making payments and increase the payments *when* and *if* he can" pay more. (Emphasis added).

On June 7, 2006, following a hearing on the probation violation, the district court found that Wakefield's only "technical" violation was that he was two days late in submitting his sworn financial statement, and the court agreed with Wakefield that he was not behind on payments because he had made two payments in advance. The district court denied the state's motion and continued Wakefield's probation.

The state then requested that Wakefield's probation order be modified to increase his monthly payments. Wakefield submitted evidence that his current gross wages were approximately $1400 per month but, after payroll deductions, including a $600 deduc-

tion for child support, his take-home pay was slightly over $600 per month. In a sworn letter, Wakefield also submitted that his employer, a restaurant, "would like to give [him] a shot at being a General Manager *if* they open a third location." (Emphasis added). Wakefield further informed the district court that this promotion would be a salary position but that he was "not sure how much that will be." The district court replied that it was going to make a modification in the amount of Wakefield's restitution payments, "promotion or not." The district court ordered Wakefield's restitution payments to increase to $300 a month starting on July 1, $400 after six months, and $500 after six more months. Wakefield immediately objected to the increases in his payments and asked the district court to reconsider those increases. He argued that to "increase the payment *right now* would in effect make him homeless." (Emphasis added). The district court refused to reconsider the increases in payments, indicating it would order them "promotion or not," and concluding: "The answer's no. There is-you can get another job, do something." Wakefield appeals, challenging the increased payment schedule as a term of his probation.

## II.

## ANALYSIS

On appeal, Wakefield asserts that the district court acted arbitrarily, thereby abusing its discretion by increasing his monthly restitution payments without considering his ability to pay and without considering whether such increases were consistent with the goals of rehabilitation and the protection of society. The parties on appeal have briefed this issue applying the standards set forth in I.C. § 19–5304, which deals with restitution for crime victims. However, we conclude that I.C. § 19–5304 is not applicable to the facts of Wakefield's case.

In the district court's probation violation disposition order, filed on June 8, 2006, the court made it clear that Wakefield was being continued on probation and that the amount of his payments were being increased pursu-

[1]. The judgment of conviction indicates that the cost of supervision was $40 per month.

ant to the court's authority under I.C. § 19–2601. Idaho Code Section 19–2601 deals specifically with conditions of probation and provides the district court with power distinct from that given it in I.C. § 19–5304. Therefore, we hold that the proper analysis of Wakefield's challenge is controlled by I.C. § 19–2601. *See State v. Parker*, 143 Idaho 165, 169, 139 P.3d 767, 771 (Ct.App.2006) (holding that orders for restitution under I.C. § 19–5304(2) are distinct from orders for compensation of the victim that may be included as terms of probation under I.C. § 19–2601(2)); *see also State v. McCool*, 139 Idaho 804, 806, 87 P.3d 291, 293 (2004).

 The decision to order restitution is within the trial court's sound discretion and will not be interfered with unless an abuse of discretion is shown. *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct.App.1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

 Idaho Code Section 19–2601(2) gives the trial court the discretion to place a defendant on probation "under such terms and conditions as it deems necessary and expedient." However, the statute does not provide the trial court with the authority to impose arbitrary or unreasonable conditions. *State v. Russell*, 122 Idaho 515, 518 835 P.2d 1326, 1329 (Ct.App.1991). The purpose of probation is to give the defendant an opportunity to be rehabilitated under proper control and supervision. *Id.* Thus, a condition of probation must be reasonably related to the purpose of probation, which is rehabilitation. *State v. Sandoval*, 92 Idaho 853, 860–61, 452 P.2d 350, 357–58 (1969).

Reviewing a restitution payment schedule that sets future increases in the amount of payments prospectively without considering a probationer's ability to pay those increased amounts as they come due is an issue of first impression for this Court. At the June 7, 2006, probation revocation hearing, the undisputed evidence showed that Wakefield was taking home slightly over $600 per month. After his $200 per month restitution payment, Wakefield would be left with approximately $400 a month of disposable income. Then, when the payments increased—less than one month after the hearing—Wakefield would be left with $300 a month in disposable income. Six months after that, when the payments increased again, Wakefield would be left with only $200 per month of disposable income. Finally, slightly over one year after the hearing, Wakefield's payments would increase to $500 per month, and he would be left with only $100 per month of disposable income. Although there was some evidence that Wakefield *might* be promoted *if* his employer opened another restaurant, there was no evidence presented as to what Wakefield would be earning if those two conditions occurred.

Immediately after the district court ordered the modification of Wakefield's payment schedule, he requested that the district court reconsider the increases. Wakefield's counsel told the district court that "there's absolutely no way he's going to be able to make those payments in those amounts on that time schedule and [it] is just setting him up to fail." The district court refused.

While the district court recognized its imposition of conditions of probation as a discretionary decision, we hold that the district court abused its discretion by acting arbitrarily, without evidence before it to support the decision made. In doing so, the court disregarded the legal standards developed in the case law and in I.C. § 19–2601. Specifically, the district court needed to examine Wakefield's then-current financial resources, needs, and earning ability before increases in his monthly payment amounts would take effect. A payment schedule that sets arbitrary, prospective increases without re-evaluating a probationer's current resources, needs, and earning ability at the time those increases are to take effect is an abuse of discretion. A simple review hearing held by the district court at the set six-month intervals, or upon motion of a party if Wakefield's income increases, would then take into account his *current* ability to pay.

In this case, the prospective increases are particularly troubling given that, if Wakefield's take-home pay does not increase-and there is no guarantee that it will increase-in slightly over a year from the revocation hearing, Wakefield will be required to pay $500 of his $600 a month, or 83.3 percent, of his take-home pay in restitution. We note that when Wakefield's probation officer requested that Wakefield be placed on unsupervised probation, he indicated that Wakefield would be able to pay $200 per month if he could use the $40 fees he was currently paying towards supervision.

Additionally, as the *Sandoval* Court noted, conditions of probation must be reasonably related to the goal of rehabilitation. In this case, Wakefield told the district court that the imposition of the increases in his payment schedule was "just setting him up to fail." Without making a determination of Wakefield's ability to pay the increased amounts when those increases become effective, we conclude that, not only are those future increased payments arbitrary, but they also may be impossible or nearly impossible for Wakefield to fulfill. Certainly a condition of probation that sets a probationer up for near-certain failure can not be said to be reasonably related to the ultimate goal of rehabilitation. Therefore, the district court abused its discretion in ordering prospective increases in Wakefield's restitution payments when reinstating him on probation.

## III.

## CONCLUSION

The district court abused its discretion in setting arbitrary increases in restitution payments prospectively into the future without regard to Wakefield's ability to pay before those increases become effective. Accordingly, we reverse the order of the district court increasing the amount of Wakefield's monthly restitution payments.

Judge LANSING and Judge GUTIERREZ, concur.

