**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34940**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2010 Opinion No. 3** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: January 12, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| MICHAEL SCOTT MOLEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Boise County. Hon. Kathryn A. Sticklen and George D. Carey, District Judges.

Judgment of conviction for lewd conduct with a minor under sixteen, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

Michael Scott Molen appeals from his conviction for lewd conduct with a minor. He claims error in the exclusion of Molen's proffered evidence that the child had acquired extensive knowledge of sexual matters prior to the alleged offense, the State's use of evidence that Molen did not speak to law enforcement authorities about the charges, and the court's failure to give a unanimity instruction to the jury.

## I.

## BACKGROUND

Molen was charged with lewd conduct with a minor, Idaho Code § 18-1508, for allegedly having genital-to-genital contact with his step-granddaughter, S.Z., when she was eight or nine years old. The defense theory at trial was that S.Z. had fabricated the allegations, perhaps at the instigation of her mother who was allegedly angry at Molen. Molen filed a pretrial motion in limine seeking an advance ruling that the court would admit testimony by five family members

1

who would say that S.Z.'s mother had exposed the child to graphic sexual conduct prior to the charged offense. In a memorandum in support, Molen explained why he sought to present this evidence:

> One of the most pressing questions the jury will ask itself is how this eight year old girl would know so much about sex unless she had actually been molested. The Defense will produce several witnesses, including the sisters and mother of [T.D.], the alleged victim's mother, who will testify that [T.D.] has exposed her daughter [S.Z.] to a constant, graphic, sexually charged lifestyle for her entire life, including openly having sex with multiple partners with [S.Z.] in the home, openly discussing and showing sex toys and pornography in front of [S.Z.], and openly disrobing in front of other family members in the presence of [S.Z.], etc. This evidence is not only relevant under IRE Rule 401 and 402, it is crucial to the jury's understanding of [S.Z.'s] knowledge of sexual matters and how she obtained it. Without it, the jury will make assumptions that are in no way based in reality.

In response, the prosecution argued that how an eight-year-old knows about sex is "completely irrelevant" because kids learn about sex in any number of ways at any number of different ages. The district court apparently agreed with the prosecution's relevance argument, because it held that the testimony would not be admitted.

At the trial,[1] S.Z. testified to sexual molestation by Molen, including sexual intercourse, occurring on many occasions. As part of its case-in-chief, the State elicited from S.Z's mother testimony that she had not spoken to S.Z. "in detail about sex and how she might talk about that if she were to talk to authorities in this case." Molen then again sought leave to present his evidence of the child's exposure to her mother's sexual behavior, contending that the prosecution had opened the door to its admission. The district court held that Molen's evidence was only tangentially relevant to the case and excluded it on the ground that its probative value was outweighed by the danger of confusion of the issues, misleading the jury, and unfair prejudice. The jury returned a guilty verdict.

On appeal, Molen asserts error in the district court's exclusion of the evidence of S.Z.'s prior exposure to sexual activity, in the prosecutor's cross-examination of Molen concerning his choice not to contact police, and in the jury instructions. He also asserts the district court erred in refusing to strike an unsubstantiated allegation from the presentence investigation report.

---

[1]     Different district judges presided on the motion in limine and at trial.

## ANALYSIS

**A.    Admissibility of the Child's Prior Sexual Knowledge**

The district court twice (once on Molen's motion in limine and once at trial) rejected Molen's offer of evidence that S.Z.'s mother had exposed her to sexual behavior before the reported offense.  The evidence was rejected initially as being irrelevant and, at trial, on the ground that any probative value that it might possess was outweighed by countervailing considerations calling for its exclusion under Idaho Rule of Evidence 403.  That rule authorizes the exclusion of evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  We review questions of relevance de novo, *State v. Raudebaugh*, 124 Idaho 758, 766, 864 P.2d 596, 604 (1993), but review determinations under I.R.E. 403 for abuse of the trial court's discretion.  *State v. Kerchusky*, 138 Idaho 671, 675, 67 P.3d 1283, 1287 (Ct. App. 2003).

Idaho appellate courts have not previously addressed the relevance of a child molestation victim's prior exposure to sexual activity,[2] but there are scores of opinions from other jurisdictions addressing the admissibility of similar evidence.  *See* Danny R. Veilleux, Annotation, *Admissibility of Evidence That Juvenile Prosecuting Witness in Sex Offense Case Had Prior Sexual Experience for Purposes of Showing Alternative Source of Child's Ability to Describe Sex Acts*, 83 A.L.R. 4th 685 (1991) and cases cited therein.  Nearly all of these cases from other states address evidence of prior molestations of the child victim to show a basis for the child's sexual knowledge, rather than evidence of the child's exposure to adult sexual

---

[2]    In *State v. Harvey*, 142 Idaho 527, 530-31, 129 P.3d 1276, 1279-80 (Ct. App. 2006), this Court considered a defendant's argument that the trial court had erroneously precluded the presentation of evidence that the sex abuse victim's ability to describe explicit sexual activities was explainable by her previous exposure to pornographic materials.  We denied relief on the ground that the defendant had presented no offer of proof demonstrating that he possessed admissible evidence of the child's exposure to pornography.  Accordingly, we were not called upon to determine whether the evidence would have been relevant had an adequate offer of proof been made.

activity, which is at issue here.[3] These decisions are nevertheless instructive regarding the relevance issue that confronts us. These courts' determinations of admissibility have generally turned very closely upon the particular facts of the charged offense and specifics of the proffered evidence, but the vast majority of courts have held that evidence of a child victim's prior exposure to sexual conduct may be relevant to show an alternative basis for the child's sexual knowledge. For example, in a case involving four child victims, the Wisconsin Supreme Court held the trial court had erred in excluding evidence of a prior sexual assault on one of the children, a seven-year-old boy. The Court explained:

> The inference that [the victim] could not possess the sexual knowledge he does unless Ms. Pullizano sexually assaulted the children greatly bolsters [the victim's] allegations. In order to rebut that inference, Ms. Pullizano must establish an alternative source for [the victim's] sexual knowledge. Evidence of the prior sexual assault is therefore a necessary and critical element of Ms. Pullizano's defense.

*State v. Pulizzano*, 456 N.W.2d 325, 334-35 (Wis. 1990). Likewise, the Supreme Judicial Court of Maine opined:

> Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge.

*State v. Jacques*, 558 A.2d 706, 708 (Me. 1989).

Another illustrative decision is *LaJoie v. Thompson*, 217 F.3d 663 (9th Cir. 2000), a federal habeas corpus action in which the defendant contended that the Oregon courts had violated his constitutional right to present a complete defense by excluding evidence that the victim of his alleged sexual abuse, a minor child, had been sexually assaulted by others. The evidence was offered to provide an alternate source of the victim's ability to describe sexual acts and as an alternative explanation for the medical evidence of abuse that the prosecution would be offering. After noting that the excluded evidence was relevant to explain injuries to the young girl's hymen, the court said:

---

[3] These opinions generally address application of rape shield laws similar to our I.R.E. 412. Rape shield laws are rules of exclusion of evidence of a victim's sexual behavior, adopted in large part to protect victims and prevent use of evidence of a victim's past sexual behavior for improper and irrelevant purposes. Neither party has suggested that Rule 412 is applicable to Molen's proffered evidence--we are dealing only with a normal relevance analysis.

4

> The evidence of [the victim's] rape by [a third party] was also relevant to show that [victim] could have learned about sexual acts and male genitalia other than through rape by LaJoie. . . . The jury did not hear of the situations from which [victim] could have gained knowledge about what a sexually-aroused man looks like, or what vaginal penetration was. If this evidence had been admitted, the jury could have concluded that [victim] knew this from her abuse by [the third party].

*Id.* at 671-72.

Like the courts whose decisions are discussed above, we conclude that evidence of an alternate source for a child's knowledge of sexual matters may be relevant in the trial of a sexual molestation charge. However, the relevance of a child's prior exposure to sexual conduct (either as a victim or as an observer) will depend upon the facts of each case. One important factor is the age of the child when he or she reports and describes the sexual assault. That is, the probative value of evidence of a child's alternative source of sexual knowledge will ordinarily be inversely proportional to the child's age, for the younger the child, the stronger the likelihood of a jury inference that the child would be too sexually innocent to have fabricated the allegations against the defendant. As the victim's age rises, the risk of such an inference will diminish and may evaporate.

A second factor in the relevance analysis is the degree of similarity between the acts of which the defendant is accused and the prior sexual activity to which the child was exposed. Logical relevance turns upon whether the child's prior sexual experience or observation would have enabled the child to describe acts of the particular type that she now ascribes to the defendant. For example, evidence that a child previously had been subjected to digital penetration might not be relevant on a charge of penile penetration. Thus, to be admissible, alternative source evidence must demonstrate the child's experience of or exposure to sexual behavior sufficiently similar to that which the child has described in her allegations against the defendant.

In cases requiring application of a rape shield law similar to I.R.E. 412, courts have also considered, as a factor weighing against admission of the evidence, the interest of avoiding trauma to the child from subjection to cross-examination concerning a prior molestation. *State v. Oliver*, 760 P.2d 1071, 1076 (Ariz. 1988). *State v. Howard*, 426 A.2d 457, 459-60 (N.H. 1981); *Pulizzano*, 456 N.W.2d at 331; *State v. Budis*, 593 A.2d 784, 790-91 (N.J. 1991); *but see Davis v. Alaska*, 415 U.S. 308, 319 (1974) (holding a witness's temporary embarrassment arising from exposure of the witness's juvenile record is outweighed by the accused's right to cross-examine

5

about possible sources of bias). We need not address that factor because the evidence proffered by Molen was not evidence of a prior molestation of the child, he did not seek to cross-examine the child but rather sought to show a basis of S.Z.'s sexual knowledge only through the testimony of other witnesses, and we are not asked to apply I.R.E. 412.

We turn, then, to the facts presented here. S.Z.'s age at the time of her initial report and description of the molestation, nine years old, is such that evidence of an alternative source of knowledge could have probative value to rebut an inference that she would have been unable to describe the charged acts unless they actually occurred. The potential probative value of such evidence was elevated in this case by the prosecutor's eliciting testimony from S.Z.'s mother from which the jury could have inferred that the child was sexually uninformed.

We nevertheless conclude that the district court did not err in excluding Molen's proffered evidence because Molen's offer of proof does not demonstrate that S.Z. was previously exposed to the sort of acts and bodily conditions that were described in her report of the charged acts. The act with which Molen was charged was vaginal intercourse. In her report of the offense at age nine, S.Z. described a variety of sexual acts including vaginal intercourse, erections, ejaculation, and masturbation. Molen's offer of proof does not demonstrate that S.Z. had previously observed such conditions or behavior. The offer of proof indicated the evidence would show that S.Z.'s mother exposed S.Z. to "a constant, graphic, sexually charged lifestyle . . ., including openly having sex with multiple partners with [S.Z.] in the home, openly discussing sex toys and pornography in front of [S.Z.], and openly disrobing in front of other family members in the presence of [S.Z.]" These assertions are too vague and general to establish an alternate source of knowledge from which S.Z. could have fabricated her description of Molen's acts. Evidence that S.Z.'s mother had sex while S.Z. was "in the home" is not equivalent to evidence that S.Z. was present in the same room and actually observed the acts, nor does the remainder of the offer of proof identify specific instances where S.Z. observed acts or bodily conditions like those described in her testimony concerning Molen. Because this offer of proof did not tend to show that S.Z. had prior knowledge that would have enabled her to fabricate the specific acts alleged against Molen, the proffered evidence was not shown to be relevant. In the absence of a showing of relevance, we need not discuss application of the Rule 403 balancing test.

Molen argues that the exclusion of this evidence violates his constitutional right to present a defense, which is rooted in the Compulsory Process or Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, and which includes the right to offer testimony of witnesses, to compel their attendance, and to present the defendant's version of the facts. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 388 U.S. 14, 18-19 (1967); *State v. Meister*, ___ Idaho ___, ___ P.3d ___ (2009); *State v. Dalrymple*, 144 Idaho 628, 635, 167 P.3d 765, 772 (2007). Molen's constitutional right to present a defense was not infringed, however, for this constitutional guarantee does not afford a criminal defendant a right to present irrelevant evidence. *Van Arsdall*, 475 U.S. at 679; *United States v. Torres*, 937 F.2d 1469, 1473 (9th Cir. 1991); *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003).

Accordingly, the exclusion of Molen's proffered evidence was not error.

**B.      Absence of a Special Unanimity Instruction**

Although Molen was charged with only one count of lewd conduct for having genital-to-genital contact with S.Z., evidence of several occasions of genital-to-genital contact was presented at trial. The district court instructed the jury that its verdict must be unanimous, but Molen contends that a more specific unanimity instruction was also necessary to inform the jurors that they must agree upon his guilt of one specific act among the several that were in evidence. Molen did not request such a unanimity instruction at trial, but contends that the issue may be raised for the first time on appeal under the fundamental error doctrine. Our Supreme Court has defined fundamental error as error that goes to the foundation or basis of a defendant's rights, goes to the foundation of the case, or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be inadvertently waived. *State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007); *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). It has also been referred to as error that so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental or constitutional right to due process. *Christiansen*, 144 Idaho at 470, 163 P.3d at 1182; *State v. Anderson*, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007); *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992). In *State v. Johnson*, 145 Idaho 970, 977-78, 188 P.3d 912, 919-20 (2008), when presented with an

7

argument that the absence of a unanimity instruction of the type sought by Molen was a fundamental error, the Supreme Court did not determine whether such an error would constitute fundamental error because it concluded that the instruction was not required in that case. We reach the same disposition here.

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132. That is, the court must deliver instructions on the rules of law that are "material to the determination of the defendant's guilt or innocence." *State v. Severson*, 147 Idaho 694, 700, 215 P.3d 414, 430 (2009); *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). This necessarily includes instructions on the "nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted." *Severson*, 147 Idaho at 700, 215 P.3d at 430; *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004). Each party is entitled to request specific instructions, but requested instructions need be given only if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not correct and pertinent if it is: an erroneous statement of the law, adequately covered by other instructions, or not supported by a reasonable view of the trial evidence. *State v. Elison*, 135 Idaho 546, 552, 21 P.3d 483, 489 (2001); *State v. Johns*, 112 Idaho 873, 881, 736 P.2d 1327, 1335 (1987); *State v. Olsen,* 103 Idaho 278, 285, 647 P.2d 734, 741 (1982); *State v. Arrasmith*, 132 Idaho 33, 43-44, 966 P.2d 33, 43-44 (Ct. App. 1998).

A jury must be instructed that a guilty verdict may be rendered only if the jury unanimously agrees on the defendant's guilt. *Severson*, 147 Idaho at 701, 215 P.3d at 431; *see also* IDAHO CONST. art. I, § 7; I.C. §§ 19-2316 and 2317; I.C.R. 31. Such an instruction was given here. An instruction that the jury must unanimously agree on the specific occurrence constituting the offense generally also should be given when evidence is presented that the defendant has committed several temporally discrete acts, each of which would independently support a conviction for the crime charged. *Severson*, 147 Idaho at 701, 215 P.3d at 431; *Gain,* 140 Idaho at 172-73, 90 P.3d at 922-23; *State v. Montoya*, 140 Idaho 160, 167-68, 90 P.3d 910, 917-18 (Ct. App. 2004); *Miller v. State*, 135 Idaho 261, 266-68, 16 P.3d 937, 942-44 (Ct. App. 2000). A unanimity instruction is not the only way, however, that the requirement of jury unanimity may be satisfied at trial. As we held in *Gain*, 140 Idaho at 173, 90 P.3d at 923, when "several distinct criminal acts support one count, jury unanimity must be protected by the state's

election of the act upon which it will rely for conviction *or* by a clarifying instruction requiring the jurors to unanimously agree that the same underlying criminal act has been proven beyond a reasonable doubt." *See also Johnson*, 145 Idaho at 977, 188 P.3d at 919; *Miller*, 135 Idaho at 268, 16 P.3d at 944.

Here, during opening argument, in the presentation of evidence, in arguments before the trial court, and at closing argument, the prosecution focused on a single act of genital-to-genital contact between Molen and the victim as the charged offense upon which Molen was being tried. Indeed, most of the evidence of other sexual conduct was introduced by Molen himself, primarily through cross-examination of the victim concerning her various statements made to the police and other interviewers, and through stipulation for admission of a videotape of an interview of the child. In this circumstance, where the prosecution clearly elected one distinct act upon which it was relying for conviction, a specific unanimity instruction was not required in order to protect the requirement of jury unanimity. Because there was no error in the failure to give a special unanimity instruction, there could be no fundamental error.

## C.  Reference to Molen's Right to Remain Silent

On cross-examination by defense counsel, the investigating officer said that after the child's allegations came to light, the officer contacted Molen's wife and told her of the allegations with the goal of talking to Molen to obtain his version of the events. The officer testified that Molen's wife suggested a good time to telephone, but that when the officer phoned at that time, and on several occasions thereafter, no one answered the telephone. In his own testimony thereafter, Molen said that after the telephone "appointment" was made, he waited at home for two and one-half weeks but was never contacted and that "I still, to this day, have not been approached by anyone from law enforcement." The prosecutor cross-examined Molen on his version of these events as follows:

> Q:   Mr. Molen, you testified that you wanted to talk to the police, but nobody called you; is that correct? Yes or no?
> A:   Yes.
> Q:   And you listened to the testimony of [the officer] on Tuesday, didn't you?
> A:   Yes, I did.
> Q:   You heard her say that she called you, and you're saying that didn't happen?
> A:   I was at my home for two weeks waiting for that call.
> Q:   Okay. So you sat at home for two weeks waiting for [the officer] to call you?

A: Yes.
Q: If you wanted to talk to the police so bad, why didn't you call them?
A: I was scared.
Q: You were scared? Okay. But you know how to call the police, right?
A: Yes.
Q: You could have easily called up [the officer] or any other officer asking to tell your side of the story, couldn't you?
A: It was not my job.
Q: Yes-or-no answer, Mr. Molen.
A: You bet I could have called them. Sure.
Q: But you didn't. You waited until you got your chance here to listen to all the witnesses and then tell your story, correct?
A: Yes.

Molen made no objection to this questioning. He now contends, however, that fundamental error occurred in the introduction of this evidence because it violated his constitutional right to remain silent. This Court has held that an improper prosecutorial trial reference to a defendant's election to remain silent can constitute fundamental error, *see Kerchusky*, 138 Idaho at 677-78, 67 P.3d at 1289-90, so we will address the issue. We disagree, however, with Molen's claim of error here.

A defendant's exercise of his right to remain silent concerning an alleged offense may not be used by the State at trial in order to raise an inference of guilt, nor may a defendant's silence after the defendant receives *Miranda* warnings[4] be used for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610 (1976); *State v. Moore*, 131 Idaho 814, 820, 965 P.2d 174, 180 (1998); *State v. Stefani*, 142 Idaho 698, 701, 132 P.3d 455, 458 (Ct. App. 2005); *Kerchusky*, 138 Idaho at 677, 67 P.3d at 1289. A defendant's silence that occurred *before* the defendant received *Miranda* warnings, however, may be used to impeach a defendant who has testified at trial. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the defendant, charged with murder, testified at trial that the shooting was an accident. To impeach this testimony, the prosecutor presented evidence that the defendant had not mentioned the shooting being an accident to the police or to anyone at anytime before trial. In addressing whether this constituted a due process violation entitling the defendant to habeas corpus relief, the United States Supreme Court said:

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966) requires that a person subjected to custodial interrogation be advised of his or her right to remain silent and right to have counsel present during questioning.

10

In *Doyle v. Ohio*, 426 U.S., at 619, 96 S.Ct., at 2245, we held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." This rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 629 (1986) (quoting *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983)). The "implicit assurance" upon which we have relied in our *Doyle* line of cases is the right-to-remain-silent component of *Miranda*. Thus, the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86, 95 (1980), or after arrest if no *Miranda* warnings are given, *Fletcher v. Weir*, 455 U.S. 603, 606-07, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 493-94 (1982) (*per curiam*). Such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. *See* 447 U.S. at 239, 100 S.Ct. at 2129.

This case illustrates the point well. The first time petitioner claimed that the shooting was an accident was when he took the stand at trial. It was entirely proper--and probative--for the State to impeach his testimony by pointing out that petitioner had failed to tell anyone before the time he received his *Miranda* warnings at his arraignment about the shooting being an accident. Indeed, if the shooting was an accident, petitioner had every reason--including to clear his name and preserve evidence supporting his version of the events--to offer his account immediately following the shooting. On the other hand, the State's references to petitioner's silence after that point in time, or more generally to petitioner's failure to come forward with his version of events at any time before trial, see n. 2, *supra*, crossed the *Doyle* line. For it is conceivable that, once petitioner had been given his *Miranda* warnings, he decided to stand on his right to remain silent because he believed his silence would not be used against him at trial.

*Brecht*, 507 U.S. at 628-29.

In *Fletcher v. Weir*, 455 U.S. 603, 607 (1982), the Supreme Court reiterated that the prohibition against use of a defendant's silence for impeachment purposes comes into play only if that silence occurs after the defendant has received *Miranda* warnings from the government and thus has been implicitly assured that his silence will not be used against him.[5] The *Fletcher*

---

[5] Even a defendant's post-*Miranda* silence may be used to directly contradict, rebut or challenge the defendant's testimonial version of events. As explained in *Doyle*,

It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory

Court held that because the record did not indicate that the defendant received *Miranda* warnings during the period in which he remained silent immediately after his arrest, there was no due process violation when the State referred to his post-arrest silence to impeach the defendant's testimony. *Id.* Hence, if the record does not indicate that the defendant received *Miranda* warnings from the government, and if the defendant's failure to give police the version of events to which he has testified at trial would tend to impeach his testimony, then evidence that the defendant did not provide this information to police may be used for impeachment purposes.

Here, nearly all of the officer's questions about Molen's silence referred to a period before his arrest and before he had spoken to police at all. Therefore, it necessarily was before he received *Miranda* warnings. The officer's references to Molen's failure to take the initiative of calling the police was legitimate impeachment of Molen's trial testimony implying that he was willing to speak to the police and had waited expectantly for their call.

The prosecutor's final question is problematical, however, because it refers to a period extending up to Molen's trial. This encompassed the period of silence after Molen had been advised of his right to remain silent by a court. In *Brecht*, the Supreme Court noted that the defendant had received *Miranda* warnings from a judge at arraignment, *Brecht*, 507 U.S. at 624, and implicitly treated this as a governmental warning of the defendant's right to silence. *Id.* at 628-29. Because of this, the Court held that the prosecutor's question "The first time you have ever told this story is when you testified here today was it not?" and the prosecutor's argument that the defendant waited to speak until he had heard the prosecution's evidence, "crossed the *Doyle* line." *Brecht*, 507 U.S. at 629. On this point, our case is indistinguishable from *Brecht*. Here, a magistrate informed Molen of his right to remain silent at Molen's initial appearance on

---

story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Doyle*, 426 U.S. at 619 n.11. *See also Stefani*, 142 Idaho at 702, 132 P.3d at 459; *State v. Dougherty*, 142 Idaho 1, 4-5, 121 P.3d 416, 419-20 (Ct. App. 2005).

the charge.[6]  The prosecutor therefore violated *Doyle* by asking Molen whether he "waited until you got your chance here to listen to all the witnesses and then tell your story."

We are unconvinced, however, that this isolated violation warrants a new trial.  An improper prosecutorial reference to a defendant's right to remain silent is subject to a harmless error analysis.  *Brecht*, 507 U.S. at 628-29.  Given the prosecutor's permissible use of Molen's pre-*Miranda* silence for impeachment, the single brief reference to post-*Miranda* silence did little or nothing to strengthen the prosecutor's point or to weaken Molen's defense.  We are therefore able to declare a belief that the error was harmless beyond a reasonable doubt.  *O'Neal v. McAninch*, 513 U.S. 432, 438 (1995); *Chapman v. California*, 386 U.S. 18, 24 (1967).

**D.     Motion to Strike an Allegation from the PSI**

The presentence investigation report (PSI) prepared for Molen's sentencing stated that the investigator had telephoned a child protective services agency in Utah County, Utah, Molen's place of residence for a number of years, and was informed of a January 1985 report of "substantiated sexual abuse" of a five-year-old girl by a "Scott Molen" who had a different birth date, but the same birth month and year as Molen.  Molen goes by "Scott," his middle name.  The PSI emphasized that this Utah report was not conclusively confirmed to involve Molen because no other record could be found and Utah authorities had no associated photograph, social security number or fingerprints.  The PSI included no other information regarding this incident, and there was no indication that a criminal charge was ever filed as a result of this report.  Before sentencing, Molen moved to strike this information from the PSI.  The district court agreed to disregard the information for sentencing purposes, but declined to cross it out on the PSI.  Molen contends that the district court erred by not striking the information from the report.

A district court's denial of a motion to strike or delete portions of a PSI is reviewed on appeal for an abuse of discretion.  Idaho Criminal Rule 32(e)(1); *State v. Rodriguez*, 132 Idaho

---

[6]     Idaho Criminal Rule 5(f)(1) requires the magistrate at a defendant's initial appearance to inform the defendant that he "is not required to make a statement and that any statement made may be used against the defendant."  In this appeal, Molen has provided only the minutes, not a transcript, of his initial appearance.  The minutes appear as a preprinted form that was not properly completed in that none of the spaces for checkmarks were filled in.  For the purposes of this appeal, however, we will assume that the magistrate complied with the law by informing Molen of the matters required by Rule 5(f)(1).

261, 263, 971 P.2d 327, 329 (Ct. App. 1998). A presentence report may include hearsay information if the presentence investigator reasonably believes the information to be reliable, but the court may consider such evidence only if the defendant has an adequate opportunity to present favorable evidence and to explain or rebut the adverse information. I.C.R. 32(g)(1); *State v. Goodlett*, 139 Idaho 262, 265, 77 P.3d 487, 490 (Ct. App. 2003). Conjecture and speculation have no place, of course, in a presentence report. I.C.R. 32(e)(1); *State v. Mauro*, 121 Idaho 178, 183, 824 P.2d 109, 114 (1991); *State v. Burdett*, 134 Idaho 271, 275, 1 P.3d 299, 303 (Ct. App. 2000).

Here, the PSI itself discloses that there is uncertainty whether Molen was the person referenced in the Utah report. Although the PSI investigator attempted to get more identifying information, he was unable to do so. Thus, the reader is left to speculate as to whether the report referred to Molen. Further, the information encompasses multiple-level hearsay from an agency file more than twenty years old. There was no way for the presentence investigator to evaluate the reliability of the unnamed person or persons who made the allegation. What is meant by the Utah agency's statement that the allegation was "substantiated" cannot be discerned, but the PSI leaves reason to doubt the level of substantiation inasmuch as there apparently was no criminal charge filed as a consequence of this report. We conclude that there was insufficient basis to credit the Utah report as reliable or as referable to Molen, and therefore its inclusion in the PSI was not warranted.

The district court correctly declined to consider the information, but incorrectly denied Molen's request that it be stricken from the PSI. With respect to portions of a PSI that are unreliable, we have said:

> [W]e regard the *better procedure* to be a "redlining" of the report, in which the court physically notes which portions are excluded. This procedure not only ensures a clear record for review but also protects the defendant against misuse of the unreliable information in the future. The use of a PSI does not end with the defendant's sentencing. The report goes to the Department of Corrections and may be considered by the Commission of Pardons and Parole in evaluating the defendant's suitability for parole. *See* I.C.R. 32(h). In addition, if the defendant reoffends, any prior PSI is usually presented to the sentencing court with an update report from the presentence investigator. Thus, a PSI follows a defendant indefinitely, and information inappropriately included therein may prejudice the defendant even if the initial sentencing court disregarded such information. Accordingly, we recommend that the district court in this case cross out on

14

Rodriguez's PSI those portions that were disregarded by the court at sentencing and forward a corrected copy to the Department of Corrections.

*Rodriguez*, 132 Idaho at 262 n.1, 971 P.2d at 328 n.1. As in *Rodriguez*, the unreliable information should have been stricken from the PSI to prevent future prejudice to Molen. Therefore, the district court is directed to cross out this information on Molen's PSI and send a corrected copy to the Department of Correction.

## III.

## CONCLUSION

Molen has shown no reversible error. Therefore, the judgment of conviction is affirmed. On remand, the district court shall modify the PSI as directed above.

Judge Pro Tem PERRY **CONCURS.**

Judge GRATTON, **SPECIALLY CONCURRING.**

I concur in Sections II.B, C, and D, and write specially concurring in Section II.A of the majority opinion.

## A.     Applicability of Idaho Rule of Evidence 412

The majority acknowledges that the "scores of opinions" of courts from other jurisdictions analyzing evidence of prior sexual knowledge do so under state rape shield laws, "similar to our I.R.E. 412."[1] However, the majority finds a distinction with those cases because "nearly all" deal with evidence of prior molestation of the child victim, "rather than evidence of the child's exposure to adult sexual activity, which is at issue here." The majority declines to apply factors considered by courts in prior abuse cases, in part, because "the evidence proffered by Molen was not evidence of a prior molestation of the child." Thus, it seems that the majority would apply Rule 412 to evidence proffered to demonstrate sexual knowledge of the child gained from prior molestation.[2] The majority does not take the opportunity to address the applicability

---

[1]     Idaho's rape shield statute is found at Idaho Code § 18-6105. Idaho Rule of Evidence 412 extends the protections and procedures of the rape shield law to other sex crimes in addition to rape. However, they are generically referred to as rape shield laws.

[2]     Indeed, the majority of courts view prior rape or sexual abuse to constitute sexual conduct or behavior, even though involuntary on the part of the child, for purposes of applying rape shield statutes. *See Grant v. Demskie*, 75 F. Supp. 2d 201, 211-212 (S.D.N.Y 1999) (collecting cases).

15

of Rule 412 to evidence of a "child's exposure to adult sexual activity."[3]  I am convinced that I.R.E. 412 is applicable and, even if not applicable by its terms, both its procedure and spirit[4] should guide the analysis of the evidence at issue.

Rule 412 provides, in part, that "in a criminal case in which a person is accused of a sex crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible."  I.R.E. 412(b).  "For purposes of this rule, the term 'past sexual behavior' means sexual behavior other than the sexual behavior with respect to which the sex crime is alleged."  I.R.E. 412(d).  As the majority states:  "Rape shield laws are rules of exclusion of evidence of a victim's sexual behavior, adopted in large part to protect victims and prevent use of evidence of a victim's past sexual behavior for improper and irrelevant purposes."  The only distinction which I can perceive in this case from those referenced by the majority from other jurisdictions is whether or not the alleged evidence constitutes "behavior" for purposes of application of the statute.  I believe it does.

Molen asserted, in a memorandum in support of his motion in limine, that he wished to call witnesses at trial to testify that S.Z.'s mother had exposed her to a "constant, graphic, sexually charged lifestyle for her entire life, including openly having sex with multiple partners with [S.Z.] in the home, openly discussing and showing sex toys and pornography in front of [S.Z.], and openly disrobing in front of other family members in the presence of [S.Z.], etc."  Molen asserted that this alleged evidence would demonstrate S.Z.'s "knowledge of sexual matters."  Assuming S.Z. watched and appreciated the nature of this sexual activity, including pornography, occurring around her, as alleged, such conduct would equate to "behavior" for

---

[3]     The majority refuses to address the applicability of Rule 412 stating:  "Neither party has suggested that Rule 412 is applicable to Molen's proffered evidence -- we are dealing only with a normal relevance analysis."  However, this Court has not generally been reluctant, when the parties have missed the analytical boat or argued for application of the wrong law, to apply the correct analysis and law.  *See State v. Wakefield*, 145 Idaho 270, 272-73, 178 P.3d 635, 637-39 (Ct. App. 2007) (parties argued application of I.C. § 19-5304, but this Court analyzed and applied I.C. § 19-2601); *see also Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006) (Sixth Amendment critical stage analysis raised by neither party but addressed by the Court as precursor to arguments presented).  Failure to address the applicability of Rule 412 leaves a void in the guidance provided to the lower courts.

[4]     I will address the policies and purposes of the rape shield laws under the I.R.E. 403 analysis below.

16

purposes of Rule 412.  As noted, the majority of courts apply rape shield laws to prior abuse, and, thus participation or action on the part of the child is not a required element of the definition of conduct or behavior.  In addition, the definition of behavior does not likely require a physical participation element for, if so, a child's watching of pornography or engaging in voyeurism would, curiously, not be considered behavior.  At bottom, while S.Z.'s alleged participation was passive, her behavior, that is, allegedly observing, understanding, and later verbalizing sexual acts, is the essential evidence sought to be introduced by Molen.  Consequently, Rule 412 should be applied.

Additionally, Rule 412 provides the following specific procedure:

> (c)(1)  If the person accused of committing a sex crime intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than five days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case.  Any motion made under this paragraph shall be served on all other parties.
>
> (2)  The motion described in paragraph (1) shall be accompanied by a written offer of proof.  If the court determines that the offer of proof contains evidence described in subdivision (b), the court shall order a hearing in chambers to determine if such evidence is admissible.  At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subdivision (b) of Rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.
>
> (3)  If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

Regardless of whether Rule 412 applies by its terms to activity of the nature alleged, I would require satisfaction of the procedure described in the rule.  I find nothing in these circumstances which calls for less and, indeed, as will be outlined more fully below, because I see this situation as problematic, these procedural protections and dictates are even more compelled.

It is important to determine whether Rule 412 applies in this situation in order to identify the proper structural analysis for the proposed evidence. The majority states that "we are dealing only with a normal relevance analysis." Relevance is a rule of inclusion under I.R.E. 401, and as the majority notes, Rule 412 is a rule of exclusion. Thus, the structure, focus, and outcome of the analysis are affected by whether Rule 412 has application, although the evidence may still be admissible under Rule 412. Recently, the Idaho Supreme Court stated:

> I.R.E. 412 applies to sex crimes and dictates the test for whether a victim's past sexual behavior is relevant and whether that evidence should be admissible. That is, if the evidence is deemed relevant pursuant to I.R.E. 412(b), a different standard than relevance pursuant to I.R.E. 401, then it will be admissible if "the probative value of such evidence outweighs the danger of unfair prejudice." I.R.E. 412(c)(3).

*State v. Meister*, ___ Idaho ___, ____, n.6, ___ P.3d ___, ____, n.6 (2009). Thus, whether I.R.E. 412 applies is a crucial issue, as it affects the relevance and balancing analysis. Moreover, I would hold that the substance and procedure of I.R.E. 412 apply to the circumstances of this case even if it does not apply by its terms.

**B.     Relevance**

The relevance analysis should be through the Rule 412 standard. Rule 412 provides:

> (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sex crime is not admissible.
> (b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is -
>> (1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or
>> (2) admitted in accordance with subdivision (c) and is evidence of -
>>> (A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or
>>> (B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the sex crime is alleged; or
>>> (C) false allegations of sex crimes made at an earlier time; or

<blockquote>
(D) sexual behavior with parties other than the accused which occurred at the time of the event giving rise to the sex crime charged.
</blockquote>

None of the exceptions in I.R.E. 412(b)(2) apply. Therefore, to the extent this evidence falls within Rule 412, its admission is dependent upon subsection (b)(1) and must be constitutionally required.

Molen argues that exclusion of the evidence violates his right to present a defense. The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Rule 412(b)(2) apparently codifies certain types of exceptions which perhaps would be constitutionally required. Rule 412(b)(1) provides for a case-by-case analysis. This Court has said that "the admission of evidence of an alleged victim's past sexual behavior is constitutionally required only in extraordinary circumstances." *State v. Peite*, 122 Idaho 809, 815, 839 P.2d 1223, 1229 (Ct. App. 1992) (citing *Doe v. United States,* 666 F.2d 43, 47-48 (4th Cir. 1981); *State v. Williams,* 487 N.E.2d 560 (1986); *People v. Hackett,* 365 N.W.2d 120, 128 (1984)). In *Meister*, the Supreme Court stated:

> . . . The Rules of Evidence embody the balancing test which safeguards a defendant's constitutional right to present a defense along with protection of the state's interest in the integrity of the criminal trial process. For instance, I.R.E. 412 employs a two-part test to evaluate whether a defendant's Sixth Amendment right to a defense is violated in light of I.R.E. 412. *State v. Self,* 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003). "First, the trial court must consider whether the evidence proffered is relevant. If it is not relevant, the defendant has no constitutional right to present it. If the evidence is relevant, the trial court must ask whether other legitimate interests outweigh the defendant's interest in presenting the evidence." *Id.* Due to the highly sensitive nature of sex crimes in general, this standard has been found to effectively balance the state's interest in protecting victims of sex crimes from disclosing their past sexual behavior except in limited circumstances and the defendant's interest in presenting a defense for the crimes of which s/he is accused.

*Meister*, ___ Idaho at ____, ___ P.3d at _____ (footnote omitted). As noted, the *Meister* Court indicated that I.R.E. 412 presents a different relevance standard from the I.R.E. 401 standard. Under Rule 412, a rule of exclusion, the evidence is excluded unless the court is convinced to admit it and, conversely, under Rule 401 the evidence is admissible unless the court is convinced to exclude it.

As a general proposition, a child's sexual knowledge, by itself, is not relevant in a sex crimes case, whether that knowledge is gained through past abuse, volitional behavior or exposure. Here, Molen argued that S.Z. fabricated her testimony of his alleged abuse. The evidence proffered, and which is at issue here, was not intended to directly prove that S.Z. was lying. Instead, Molen sought to present evidence to demonstrate only that S.Z. *could* lie. Molen argues that under the so-called sexual innocence inference theory, he is entitled to put on evidence of S.Z.'s sexual knowledge. In essence, the sexual innocence inference theory is based on the presumption that a jury will likely assume that a child is innocent of sexual matters and, when the child testifies to specific sexual acts, the jury will then infer that the child could not have testified to such acts unless they indeed occurred. *See Grant v. Demskie*, 75 F. Supp. 2d 201 (S.D.N.Y 1999) (collecting cases); Christopher B. Reid, Note, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child Molestation Victim's Prior Sexual Conduct*, 91 Mich. L. Rev. 827, 829-830 (1993). This theory, backed by scant, if any, empirical data is, however, accepted in some fashion by a majority, but not all courts. *Id.* These courts variously analyze this evidence as a way around rape shield laws or as constitutionally required despite or within the confines of rape shield laws. *Id*. In order to rebut the inference, a defendant, like Molen, will seek to introduce evidence of an alternative source of sexual knowledge from which the child could describe the alleged events. In the end, if one accepts the theory, at least to some extent, evidence of a child's prior sexual knowledge may be relevant to rebut the inference.

The majority accepts this theory as an evidentiary "inference." I do not. I would hold that the relevance of the proffered evidence should be analyzed as a part of the defense of fabrication, rather than rebutting a presumption, assumption, or inference. Labeling this theory of relevance as a presumption or inference tends to automatically open the door for rebuttal evidence.[5] As noted, this "inference" finds virtually no empirical support. Requiring analysis of

---

[5] As an example, a case cited approvingly by the majority, *State v. Jacques*, 558 A.2d 706, 708 (Me. 1989), in my view goes too far in holding that "the lack of sexual experience is *automatically* in the case without specific action by the prosecutor" and that the "defendant therefore *must* be permitted to rebut the inference." (Emphasis added.)

the proffered evidence as rebuttal of a presumed fact or inference[6] accords it too much weight and skews the relevance and balancing analysis.

I agree with the majority that under the facts and circumstances of a particular case, "evidence of an alternate source for a child's knowledge of sexual matters may be relevant." If a defendant wishes to present proof of an alternative source of knowledge of the sexual conduct alleged in order to demonstrate that the child had the ability to fabricate the story, then the court can, considering all of the circumstances, determine whether the evidence is constitutionally required by conducting a relevance and balancing analysis without automatically according the proffered evidence some weight as rebuttal to a judicially accepted evidentiary inference. In any event, despite the citation to *Jacques*, the majority correctly holds that this is not a situation of per se relevance or automatic admissibility, but that relevance is determined on a case-by-case basis. Additionally, the evidence may only be presented "for the limited purpose of proving an alternative source for sexual knowledge." *State v. Pulizzano*, 456 N.W.2d 325, 335 (Wis. 1990).[7]

I agree with the majority that the determination of relevance may be age-dependent. I also agree with the majority that the proffered proof of prior sexual knowledge must be so clear

---

[6] "Presumption. A legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts. Most presumptions are rules of evidence calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence. A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption." BLACKS LAW DICTIONARY 1223 (8th ed. 2004). Thus, recognizing the theory as a presumption or inference has legal meaning. Without any real analysis of its underpinning, the majority accepts the sexual innocence inference theory. As noted, some courts have rejected it. *State v. Clarke*, 343 N.W.2d 158, 163 (Iowa 1984); *People v. Arenda*, 330 N.W.2d 814, 818 (Mich. 1982).

[7] In *Pulizzano*, 456 N.W.2d at 335, the court devised the following test to establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge:

> [P]rior to trial the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

and similar to the abuse alleged that the child could precisely describe the abuse alleged from the prior knowledge. I further agree that the offer of proof in this case falls far short of that which is necessary to establish relevance under these circumstances. A proffer of generalized "exposure" to adult sexual activity does not establish that a child has an alternative source of sexual knowledge from which to describe the specific acts alleged.

## C.      I.R.E. 403 Balancing

Since the majority correctly concludes that Molen failed to demonstrate that the proffered evidence was relevant, it did not address the Rule 403 balancing test and concerns specific to past sexual behavior evidence. The balancing test will be of utmost importance in regard to evidence of this nature. Rape shield laws are intended to serve the broad purposes of protecting victims' privacy and reputation, protecting victims from harassment and embarrassment, encouraging the reporting of sexual crimes, preventing putting the victim on trial, and reinforcing the trial court's power to keep inflammatory, misleading, and/or confusing evidence from the jury, while not infringing on the defendant's right to a fair trial, including confrontation, presentation of relevant evidence, and presentation of a defense. *See Grant*, 75 F. Supp. 2d at 209-10. In my view, these purposes apply with equal force here, in the context of evidence of exposure to sexual activity, just as they do regarding prior sexual abuse or volitional conduct.[8]

In this case, Molen proposed to call five witnesses, including S.Z.'s grandmother, to testify that S.Z.'s mother had exposed her to a "constant, graphic, sexually charged lifestyle for her entire life, including openly having sex with multiple partners with [S.Z.] in the home, openly discussing and showing sex toys and pornography in front of [S.Z.], and openly disrobing in front of other family members in the presence of [S.Z.], etc." Aside from apparent hearsay problems, as the majority notes, this assertion of a generalized exposure to sexual activity wholly

---

[8]      Regarding application of the rape shield law, the majority distinguishes the "exposure" alleged in this case from those cases involving sexual abuse. However, for purposes of relevancy the majority analyzes exposure and abuse indistinguishably:

> "However, the relevance of a child's prior exposure to sexual conduct (either as a victim or as an observer) will depend upon the facts of each case."

> "Thus, to be admissible, alternative source evidence must demonstrate the child's experience of or exposure to sexual behavior sufficiently similar to that which the child has described in her allegations against the defendant."

In my view, the rape shield law as well as principles of relevancy should be applied equally to both.

fails to demonstrate specific prior knowledge from which to describe the abusive acts alleged in this case. The district court correctly foreclosed this requested free-for-all discussion of S.Z.'s mother's sex life, apparently designed to impugn S.Z.'s mother and, inferentially, S.Z. The prejudicial effect, misleading of the jury, and confusion of the issues as to the proffered evidence in this case is extant.

As the majority notes, all or nearly all of the cases discussing evidence of an alternative source of sexual knowledge involve knowledge allegedly gained from prior molestation, not a more generalized exposure to sexual activity. I suppose this is so, in part, because evidence of generalized exposure does not satisfy the requirement that the prior sexual knowledge specifically includes the acts alleged. Moreover, evidence of a prior molestation likely exists independently, that is, it was reported to someone at or near the time of the occurrence. Therefore, the fact can likely be proved through someone other than the child and without the need to call a host of witnesses regarding "exposure" or engage in embarrassing cross-examination.

The majority notes that Molen did not request to cross-examine the child relative to the alleged sexual activity. However, in the case of exposure, as opposed to actual prior molestation, I fail to see how cross-examination of the child would not be inevitable. If Molen had been allowed to call five witnesses, some of whom were relatives, to discuss S.Z.'s mother's alleged prior sexual activities, the State, aside from vigorous cross-examination, would have been forced to call other witnesses, aside from S.Z.'s mother, to rebut the testimony. These witnesses may include some of the alleged former sexual partners to deny activity in front of S.Z., as well as the "other family members." Moreover, proof of actual exposure would, at best, demonstrate an *opportunity* for S.Z. to gain some knowledge, not that she did. In such situation, it is inevitable that examination and cross-examination of S.Z. would occur to test what knowledge she did in fact have prior to the allegations made in the instant matter. This also is distinguishable from the case of past sexual abuse, where it may be more readily presumed that the victim would recall and could verbalize the nature of the past abuse, which could be compared to the abuse presently alleged. Sufficient proof of a child's ability to describe the acts alleged from prior exposure is

vastly more difficult and subject to exclusion under Rule 403 than proof of a prior sexual abuse which may provide the child with the ability to describe the acts alleged.[9]

I am further concerned where this could lead in discovery. The intrusive nature of investigation relative to possible sources of "exposure" is apparent. Unchecked, investigation could include the sexual activities and sexual materials of all extended family members, babysitters, friends and others; a wholesale intrusion into very private matters. Of course, a focused investigation, based upon some real basis to believe that evidence of prior sexual knowledge would be discovered, might be appropriate. A fishing expedition would not. *State v. Gabrielson*, 109 Idaho 507, 510, 708 P.2d 912 (Ct. App. 1985).

Lastly, evidence of an alternative source of knowledge, sufficient to enable the child to describe the alleged events other than by their actual occurrence, is still not a gateway to calling the child a liar. Evidence that the child could lie does not prove, and should not be considered proof, by itself, that the child lied.

---

[9]    This is not to say that proof of prior sexual abuse is automatically relevant and admissible. Indeed, as previously discussed, evidence of that nature would be subject to I.R.E. 412. I only draw this comparison to highlight the very narrow window of relevance and admissibility which may exist for evidence of prior exposure.