974 P.2d 1109

STATE of Idaho, Plaintiff–Appellant,

v.

John William MACK, Defendant– Respondent.

No. 23579

Court of Appeals of Idaho.

Feb. 24, 1999.

Hon. Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for appellant. Catherine O. Derden argued.

Rude, Jackson & Daugharty, Coeur d'Alene, for respondent. Mark A. Jackson argued.

LANSING, Judge

John Mack was charged with providing false information to an insurance company regarding repair work performed at his auto body shop. A jury found Mack guilty. Thereafter, Mack filed a motion for a new trial. The district court granted a new trial, but on a ground not raised by Mack. On appeal, the State contends that the district court did not have the authority to order a new trial on a ground raised *sua sponte* and that, if it did possess such authority, the court abused its discretion by doing so in this case.

## FACTS AND PROCEDURAL BACKGROUND

John Mack owned Mack's Auto Body Shop in Post Falls. In early 1994, he was approached by his brother, Larry Mack, and Nick Cahoon about a repair job on a Dodge truck. The repairs were to be paid for by State Farm Insurance Company. It was agreed that Cahoon and Larry Mack would do the repair work and labor on the vehicle, while Mack would provide the use of his auto body shop and the money to purchase replacement parts. The three agreed to split the profits from the repairs.

A wide variety of parts were purchased for the job. During the repair process, Mack contacted the local Dodge dealer and asked for the prices on certain parts that were needed for the vehicle. Jim Parmentier, the Dodge parts salesman, prepared a number of "invoices" using the dealership computer. Parmentier immediately voided out the invoices on the computer, however, because Mack was not ordering the parts at that time. Parmentier provided copies of both the voided and unvoided invoices to Mack. Some of the parts included on the invoices were ultimately ordered and used in the repairs, while others were not.

Subsequently, the State Farm estimator went to Mack's body shop where he checked the status of the repairs and met with Cahoon and Karla Luraski, Mack's bookkeeper. Mack was talking with a customer at the time and participated only somewhat peripherally in the meeting. During the meeting and in Mack's absence, Luraski handed the estimator a number of invoices, including the unvoided invoices from the Dodge dealership that did not represent an actual purchase of parts. According to Luraski's trial testimony, Mack directed her to give the invoices at issue to the State Farm estimator. However, she admitted on cross-examination that she gave the estimator some invoices that Mack did not ask her to pass on. The estimator spoke with Cahoon about the parts additions and discussed certain of the painting charges with Mack.

Approximately five months after this meeting, Luraski met with police officers and admitted having embezzled money from Mack's business. She later alleged that Mack had defrauded State Farm during the truck repair, and she provided the police a number of files that she had taken from Mack's office. Investigation revealed that some of the invoices given to the insurance company were false, representing that new

parts had been purchased and placed on the truck when in fact used parts had been purchased or the particular part had not been replaced at all. Mack was charged with submitting a false statement to an insurer for the purpose of obtaining money, I.C. § 41–1325.[1] The case was tried to a jury, and Mack was found guilty.

Following the verdict, Mack filed a motion for a new trial. The motion urged that he was entitled to such relief due to prosecutorial misconduct and insufficiency of the evidence to support the verdict. The district court found these claims to be without merit, but nonetheless granted a new trial on a ground that it raised *sua sponte*. The district court concluded that it had erred in the course of the trial by failing to instruct the jury that a defendant may not be convicted solely upon the testimony of accomplices. The court further concluded that this error had deprived Mack of a fair trial, making a new trial necessary.

The State filed this appeal and presents two issues for our consideration. First, the State argues that the trial court did not have the authority to grant a new trial on a ground not raised by Mack. Second, the State claims that, even if the trial court did have the authority to do so, the granting of a new trial in this case was unjustified.

## ANALYSIS

### A. The District Court Had Authority to Grant a New Trial on a Ground Not Raised by the Defendant.

■ The State's assertion that a trial court does not have the authority to order a new trial on a basis that was not raised by the defendant is an issue of first impression in this state. It presents a question of law over which we exercise free review. *State v. Browning*, 123 Idaho 748, 749, 852 P.2d 500, 501 (Ct.App.1993); *Hanks v. State*, 121 Idaho 153, 154, 823 P.2d 187, 188 (Ct.App.1992).

A trial court's authority to grant a new trial is derived from I.C. § 19–2406 and Idaho Criminal Rule 34. The State points out that both of these refer to the court's power to order a new trial only upon the defendant's application. That is, I.C. § 19–2406 specifies that, "When a verdict has been rendered against the defendant the court may, *upon his application*, grant a new trial in the following cases ..." (emphasis added), and I.C.R.34 provides that, "The court *on motion of a defendant* may grant a new trial ...." (emphasis added). On the basis of this language in the statute and rule, the State contends that the trial court exceeds its authority if it grants a new trial on a ground not urged by the defendant.

■ We disagree with the State's assertion. A motion for a new trial may be granted if the criteria of I.C. § 19–2406 and I.C.R. 34 are met. First, the statute and the rule require that the defendant make a motion for a new trial. Second, the motion must be granted on one of the grounds enunciated in § 19–2406.[2] *State v. Gomez*, 126 Idaho 83, 86, 878 P.2d 782, 785 (1994); *State v. Lankford*, 116 Idaho 860, 873, 781 P.2d 197, 210 (1989). Finally, the grant must be in the interest of justice, pursuant to I.C.R. 34. *Lankford, supra.* Neither the statute nor

1. Subsequently redesignated as Idaho Code § 41–293 by 1994 Idaho Sess. Laws ch. 219.

2. Idaho Code Section 19–2406 specifies the permissible grounds for a new trial in a criminal case as follows:

When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:
1. When the trial has been had in his absence, if the indictment is for a felony.
2. When the jury has received any evidence out of court other than that resulting from a view of the premises.
3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented.
4. When the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors.
5. When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial.
6. When the verdict is contrary to law or evidence.
7. When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial.

the rule prohibit the grant of a new trial on grounds not argued by the defendant, so long as the defendant has requested a new trial[3] and the ground relied upon by the court is one of those specified in the statute. Section 19–2406(5) authorizes a new trial "when the court has misdirected the jury in a matter of law." Thus, it was within the district court's authority to order a new trial for Mack on the ground that the court had erroneously omitted to give a necessary jury instruction.

## B. The Court Did Not Abuse Its Discretion in Granting a New Trial.

We next consider the State's argument that, even if the court possessed authority to grant a new trial on a ground raised *sua sponte,* its order in this case was an abuse of discretion because the jury in Mack's trial was not incorrectly instructed.

 A district court has wide discretion to grant or disallow a new trial, and, on appeal, this Court will not disturb that exercise of discretion, absent a showing of manifest abuse. *State v. Cantu,* 129 Idaho 673, 674, 931 P.2d 1191, 1192 (1997); *State v. Davis,* 127 Idaho 62, 65, 896 P.2d 970, 973 (1995); *State v. Olin,* 103 Idaho 391, 399, 648 P.2d 203, 211 (1982). However, whether a jury was properly instructed is a question of law over which we exercise free review. *State v. Miller,* 130 Idaho 550, 551–52, 944 P.2d 147, 148–49 (Ct.App.1997); *State v. Fetterly,* 126 Idaho 475, 476, 886 P.2d 780, 781 (Ct.App.1994).

In a criminal case, the district court has a duty to give the jury instructions on "all matters of law necessary for their information." I.C. § 19–2132. The trial court thus must give instructions on rules of law material to the determination of the defendant's

guilt or innocence. *State v. Brown,* 131 Idaho 61, 951 P.2d 1288, 1298 (Ct.App.1998); *Fetterly,* 126 Idaho at 476, 886 P.2d at 781. Such obligatory instructions include those necessary to correctly inform the jury with respect to the nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted. *State v. Beason,* 95 Idaho 267, 275, 506 P.2d 1340, 1348 (1973); *State v. Patterson,* 60 Idaho 67, 75–76, 88 P.2d 493, 496 (1939); *State v. Brown,* 130 Idaho 389, 391, 941 P.2d 361, 363 (Ct.App.1997).

Under Idaho law, a defendant may not be convicted on the testimony of an accomplice unless that testimony is "corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." I.C. § 19–2117. This requirement for the corroboration of the testimony of the accomplice cannot be fulfilled by the testimony of another accomplice. *State v. Rose,* 75 Idaho 59, 64, 267 P.2d 109, 112 (1954); *State v. Brooks,* 103 Idaho 892, 904, 655 P.2d 99, 111 (Ct.App.1982).

 Where the evidence raises a genuine issue as to whether a witness is an accomplice, the district court must submit the issue to the jury for resolution and instruct the jury accordingly. *State v. Jones,* 125 Idaho 477, 486, 873 P.2d 122, 131 (1994); *State v. Emmons,* 94 Idaho 605, 608, 495 P.2d 11, 14 (1972); *State v. Ruiz,* 115 Idaho 12, 16, 764 P.2d 89, 93 (Ct.App.1988). On the other hand, if it is clear from the evidence that a witness is an accomplice of the defendant, the court should decide the question as a matter of law and inform the jury that the witness is an accomplice. *Emmons, supra; State v. Gonzales,* 92 Idaho 152, 156, 438 P.2d 897,

---

**3.** The limitation that a court can order a new trial only upon an application of the defendant may have been incorporated into I.C. § 19–2406 and I.C.R. 34 *to avoid the violation of a defendant's constitutional rights against double jeopardy, which could occur if the court acts on its own motion. See United States v. Smith,* 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); *United States v. Eaton,* 501 F.2d 77, 79 (5th Cir.1974); *United States v. Green,* 414 F.2d 1174, 1175 (D.C.Cir.1969); Fed R.Crim.P. 33 advisory committee's note; 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 551

(2d ed.1982). The double jeopardy problem does not arise, however, when the defendant has sought a new trial and the court merely grants the requested relief on a ground different from that asserted by the defendant. By requesting such relief the defendant would have waived any double jeopardy objection. *See State v. Hansen,* 127 Idaho 675, 679, 904 P.2d 945, 949 (Ct.App. 1995) (holding that motion for mistrial generally waives double jeopardy objection to second trial); *State v. Fairchild,* 121 Idaho 960, 963, 829 P.2d 550, 553 (Ct.App.1992) (same).

901 (1968); *Ruiz, supra.* In either event, the court must instruct the jury regarding the necessity of evidence to corroborate an accomplice's testimony. *Jones, supra; State v. Wilson,* 93 Idaho 194, 200, 457 P.2d 433, 439 (1969). As a result, it can be reversible error for the trial court to fail to instruct the jury on the definition of accomplice, on the statutory requirement that the testimony of an accomplice be corroborated, and on the degree and character of corroboration required. *State v. Lucio,* 99 Idaho 765, 766, 589 P.2d 100, 101 (1979); *Wilson, supra; Gonzales, supra.*

According to the State, however, such instructions were not required in this case because none of the State's witnesses could be viewed as accomplices. We do not agree.

■ Idaho Criminal Jury Instruction 313 defines an accomplice, for this purpose, as:

a person who intends to promote or assist in the commission of a crime and who either directly commits the acts constituting the crime or who, before or during its commission, aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit the crime. Mere presence at, acquiescence in, or silent consent to, the planning or commission of a crime is not ... sufficient to make one an accomplice.

Several of the State's witnesses at Mack's trial could have been found by the jury to fall within this definition. The State's primary witness who directly implicated Mack in the commission of the offense was the bookkeeper, Karla Luraski. There was evidence that she participated in the fraud by delivering to the insurance company's representative copies of invoices that she knew did not reflect actual purchases of parts used in the truck repair. The State's evidence that Mack intended to present a false claim to the insurer turned almost exclusively upon her testimony. There is also evidence from which the jury could have inferred that other witnesses were accomplices, including Cahoon and Larry Mack, who participated in the truck repair and shared in the profit realized from the insurance company's payment.

The State argues that none of these witnesses were accomplices because they all denied an intent to defraud the insurance company. The jury, however, was not obligated to accept the witnesses' self-serving testimony regarding intent, or to accept the State's characterization of these people as unwitting participants. The jury was free to infer intent from their behavior. *State v. Parkinson,* 128 Idaho 29, 38, 909 P.2d 647, 656 (Ct.App.1996); *State v. Bronson,* 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct.App.1987). Moreover, Luraski's own testimony indicated that she knew the invoices she was presenting to the insurer, allegedly at Mack's direction, were fraudulent and that she thereby knowingly facilitated the offense.

The district court was correct in determining that the jury should have been instructed regarding the necessity for corroboration of accomplice testimony, and the court therefore acted well within its discretion when it ordered a new trial on the ground that the jury had been misdirected.

## CONCLUSION

We conclude that, when a criminal defendant has moved for a new trial following a guilty verdict, the trial court possesses authority to order a new trial on grounds not raised by the defendant. In this case, the district court was correct in concluding that the jury had been misdirected because it had not been instructed regarding the statutory prohibition against conviction of a defendant solely upon the testimony of an accomplice. Accordingly, the district court's order granting a new trial is affirmed.

Judge Pro Tem BENGTSON CONCURS.

Judge SCHWARTZMAN, CONCURRING.

I concur in the result reached and general reasoning contained in the lead opinion. I write to suggest a procedural protocol, however, grounded in due process, should such a situation arise in the future. My suggestion for the trial court would be for the judge to raise his/her concern and highlight the issue (specific ground for a new trial) *before* giving a final opinion. That way, the state would have notice and an opportunity to respond by

way of written authorities and/or argument prior to the court's actual ruling. Such was not done in this case and the state may have been caught off-guard without an opportunity to fully respond.

Nevertheless, the state did not seek a motion for reconsideration nor ask for an opportunity to respond to the ruling. Furthermore, and by way of consolation to the state, this issue would have resurfaced through the Uniform Post–Conviction Procedure Act at a much later date and been resolved against the state at that juncture. Such being the case, "all's well that ends well."

Judge Pro Tem BENGTSON CONCURS.