28 P.3d 387

**Sean Joel MATTHEWS, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 26187.

Court of Appeals of Idaho.

June 28, 2001.

Manweiler, Wilcox, Trout, Manweiler, PLLC, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger II, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Sean Joel Matthews appeals from the district court's order denying his amended application for post-conviction relief. We affirm.

## I.

## BACKGROUND

In March 1983, Matthews was found guilty by a jury of first degree murder. I.C. §§ 18–4001 to –4004. The district court sentenced Matthews to an indeterminate life term. Matthews appealed, arguing that the charge against him should have been transferred to juvenile court or dismissed. This Court rejected Matthews's argument and affirmed his judgment of conviction. *State v. Matthews*, 108 Idaho 453, 700 P.2d 75 (Ct. App.1985). In March 1990, Matthews filed an application for post-conviction relief, which was dismissed by the district court. Matthews appealed. The Idaho Supreme Court vacated the district court's order dismissing Matthews's application and remanded the case for consideration of Matthews's allegations that he received ineffective assistance of counsel. *Matthews v. State*, 122 Idaho 801, 839 P.2d 1215 (1992). On remand, Matthews filed an amended application for post-conviction relief, alleging that he received ineffective assistance of counsel at trial and on appeal. Following an evidentiary hearing, the district court concluded that Matthews failed to show that he received ineffective assistance of counsel at trial or on direct appeal. Consequently, the district

court denied Matthews's amended application for post-conviction relief. Matthews appeals, challenging the effectiveness of his trial counsel.[1]

## II.

## ANALYSIS

On appeal, Matthews argues that the district court erroneously denied his amended application for post-conviction relief. Matthews maintains that he received ineffective assistance because his trial counsel failed to request a number of jury instructions and failed to object to certain testimony elicited by the state on cross-examination.

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19–4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 764 P.2d 439 (Ct.App.1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct.App.1992).

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Russell*, 118 Idaho at 67, 794 P.2d at 656; *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989). To

establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Russell*, 118 Idaho at 67, 794 P.2d at 656. However, there is a strong presumption that trial counsel's performance falls within the wide range of "professional assistance." *Aragon*, 114 Idaho at 760, 760 P.2d at 1176. Furthermore, tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct.App.1994). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Russell*, 118 Idaho at 67, 794 P.2d at 656. In other words, an applicant must show that the deficient conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992).

### A. Instruction re: Accomplice Testimony

Matthews contends that he received ineffective assistance because trial counsel did not request a jury instruction regarding the corroboration of accomplice testimony. A defendant may not be convicted on the testimony of an accomplice unless the testimony is "corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." I.C. § 19–2117; *see also State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct.App.1999). This statutory corroboration requirement is intended to protect against the danger that an accomplice may wholly fabricate testimony, incriminating an innocent defendant in order to win more favorable treatment for the accomplice. *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct.App.1998). To satisfy the stat-

1. Matthews was paroled on December 20, 1996.

ute, corroborating evidence must connect the defendant to the crime, but it need not be sufficient, in itself, to convict the defendant, and it need not corroborate the testimony of the accomplice in every detail. *State v. Aragon,* 107 Idaho 358, 364, 690 P.2d 293, 299 (1984); *Pecor,* 132 Idaho at 367, 972 P.2d at 745. The corroborating evidence may be slight, need only go to one material fact, and may be entirely circumstantial. *State v. Campbell,* 114 Idaho 367, 369, 757 P.2d 230, 232 (1988); *Pecor,* 132 Idaho at 367, 972 P.2d at 745. Statements attributed to the defendant himself may serve as the necessary corroboration. *Campbell,* 114 Idaho at 370, 757 P.2d at 233; *Pecor,* 132 Idaho at 367, 972 P.2d at 745.

 Where the evidence raises a genuine issue as to whether a witness is an accomplice, the district court must submit the issue to the jury for resolution and instruct the jury accordingly. *Mack,* 132 Idaho at 483, 974 P.2d at 1112. However, if it is clear from the evidence that a witness is an accomplice of the defendant, the trial court should decide that the witness is an accomplice as a matter of law and instruct the jury accordingly. *Id.* In either event, the trial court must also instruct the jury regarding the necessity of evidence to corroborate an accomplice's testimony and on the degree and character of corroboration required. *Id.* at 484, 974 P.2d at 1113; I.C.J.I. 313–14.

 The record reveals that first degree murder charges were originally brought against Matthews and four other juveniles. The charges stemmed from allegations that they had tortured and beaten to death a sixth juvenile, Christopher Peterman, while all six were incarcerated in the Ada County jail. One of the four juveniles, Joseph Krahn, testified at Matthews's trial on behalf of the state. The evidence presented at trial raised a genuine issue as to whether Krahn was an accomplice. Thus, the jury should have been instructed regarding the issue and the possible necessity of corroborating evidence. Nevertheless, we conclude that Matthews was not prejudiced by any deficiency in failing to request such an instruction.

Krahn testified that the events culminating in Peterman's death began one night when everyone started hitting Peterman after he threatened to inform the guards that the others had given him a "hotfoot" while he was sleeping. Krahn testified that, on the following day, the other three boys continued to beat Peterman and that Matthews dragged Peterman outside on two occasions to show him to the adults in the adjoining cell. Krahn testified that, after Peterman was shown to the adult inmates for the second time, the other three boys again beat Peterman and ordered him to return to his bedroom. Krahn testified that the other three boys hit Peterman a few more times at the door to the bedroom and that Peterman appeared to be really dazed and unbalanced. Krahn testified that Peterman was kicked in the stomach by one of the other juveniles and that Peterman fell and struck his head on the cement floor. Krahn testified that Matthews told the others to leave Peterman alone because he was unconscious and that they discovered shortly thereafter that Peterman was not breathing. Krahn testified that he did not see Matthews hit Peterman during the last five to ten minutes before Peterman was kicked in the stomach.

Krahn's testimony is corroborated by testimony offered by Matthews and by two of the adults in the adjacent cell. Matthews admitted that he hit Peterman numerous times after Peterman was given a "hotfoot." Matthews admitted that he joined the other boys in beating Peterman on the following day and that he dragged Peterman to be viewed by an adult in the adjacent cell. Matthews admitted that he hit Peterman in the jaw before Peterman returned to the bedroom and that he hit Peterman again after entering the bedroom. Matthews admitted that he was with the other boys when Peterman was shown to the adults in the adjacent cell for the second time. Matthews claimed that he did not hit Peterman after Peterman was last shown to the adults. However, two of the adults in the adjacent cell, Todd Henault and Bobby Guggenmos, testified on behalf of the state that Matthews and two other juveniles were hitting and kicking Peterman *after* Peterman was last shown to the adults.

Based on the evidence admitted at Matthews's trial that corroborated Krahn's testi-

mony, we cannot say that the outcome of the trial would have been different had Matthews's counsel requested a jury instruction regarding the corroboration of accomplice testimony. Consequently, Matthews has failed to show that he received ineffective assistance because trial counsel did not request a jury instruction regarding the corroboration of accomplice testimony.

### B. Instruction re: Evidence of Prior Felony Convictions

Matthews contends that he received ineffective assistance because trial counsel did not request a jury instruction regarding the credibility of testimony given by Henault. At trial, Henault testified on cross-examination that he had a prior conviction for grand theft.[2] In his application for post-conviction relief, Matthews asserted that the evidence of Henault's prior conviction was admitted pursuant to I.R.E. 609 for impeachment purposes and that his counsel should have requested an instruction "informing the jury of possible bases to question ... Henault's credibility."

 In those cases where evidence of a criminal conviction is admitted to impeach a witness pursuant to I.R.E. 609, the Idaho Criminal Jury Instructions suggests that the jury be instructed as follows: "Evidence that a witness has been convicted of an offense *may* be considered by you only as it *may* affect the believability of the witness." I.C.J.I. 321 (emphasis added). This suggested jury instruction limits the jury's consideration of the evidence to its effect on the credibility of the witness. Notably, this suggested jury instruction does not comment on how, *or if*, the evidence affects the witness's credibility. As pointed out in jury instruction 6 in the instant case, the jurors "are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them." It would be inappropriate for the trial court to instruct the jury that a prior felony conviction is a reason to disbelieve a particular witness.

Matthews would not have been entitled to a jury instruction informing the jury that Henault's criminal conviction was a specific reason to disbelieve his testimony. Consequently, Matthews has failed to show that he received ineffective assistance because trial counsel did not request a jury instruction regarding the credibility of testimony given by Henault.

### C. Instruction re: Immunized–Informer Witness

 Matthews contends on appeal that he received ineffective assistance because trial counsel knew that Henault was offered a deal from the state in exchange for his testimony and, nevertheless, did not request an immunized-informer witness instruction. However, the record reveals that Matthews's trial counsel did not learn of Henault's agreement with the state until four days after the jury had returned its verdict. Thus, we cannot say that Matthews's trial counsel was deficient in not requesting an instruction based upon the offered deal.

Matthews also appears to argue on appeal that he received ineffective assistance of counsel because trial counsel failed to file a motion for new trial based upon Henault's deal. However, this issue was not raised in Matthews's application for post-conviction relief and will not be considered by this Court for the first time on appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).

### D. Objections on Cross-examination

 Matthews contends that he received ineffective assistance because trial counsel did not object when Matthews was cross-examined by the state regarding his prior criminal history. Generally, evidence of other crimes or acts is inadmissible "to prove the character of a person in order to show that the person acted in conformity therewith." I.R.E. 404(b). The evidence may be admitted, however, for "other purposes, such as proof of motive, opportunity, intent, prep-

2. Although evidence was admitted regarding additional criminal activity, no other evidence was admitted regarding actual convictions.

aration, plan, knowledge, identity, or absence of mistake or accident." *Id.*

A review of the trial transcript reveals that Matthews testified on direct examination regarding his prior criminal conduct. He admitted that he had prior juvenile dispositions for a number of burglaries, possession of tobacco, stealing vehicles, possession of stolen property, and fraudulent use of a credit card. According to Matthews's counsel, this line of questioning on direct examination was to evoke sympathy from the jury, putting Matthews "in their hands for the rest of his life."

Matthews's testimony on direct examination opened the door to questions on cross-examination regarding his prior criminal history. *See State v. Odiaga,* 125 Idaho 384, 389, 871 P.2d 801, 806 (1994); *State v. Enno,* 119 Idaho 392, 407, 807 P.2d 610, 625 (1991). Moreover, Matthews does not argue that this trial strategy was flawed or that trial counsel provided ineffective assistance by questioning him on direct examination regarding his prior criminal history. Consequently, we cannot say that Matthews's counsel was deficient in not objecting to questions on cross-examination regarding his prior criminal history or in not requesting a jury instruction limiting the use of such evidence. *See* I.C.J.I. 303.

## III.

## CONCLUSION

Matthews has failed to show on appeal that his trial counsel provided ineffective assistance. The district court's order denying Matthews's amended application for post-conviction relief is affirmed.

Chief Judge SCHWARTZMAN and Judge LANSING, concur.