**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49471**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 17, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| POMPEYO SALAZAR-CABRERA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Gregory FitzMaurice, District Judge. Hon. Gregory Kalbfleisch, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment of conviction for misdemeanor vehicular manslaughter, <u>affirmed</u>.

Blewett Muschlitz Hally, LLP; Jonathan D. Hally, Lewiston, for appellant. Jonathan D. Hally argued.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

LORELLO, Chief Judge

Pompeyo Salazar-Cabrera appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming his judgment of conviction for misdemeanor vehicular manslaughter. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Salazar-Cabrera with felony vehicular manslaughter after he drove his semi-truck and trailer down a hill and failed to stop at a stop sign, resulting in a collision that killed another driver. A jury acquitted Salazar-Cabrera of the felony charge but found him guilty of the

1

included offense of misdemeanor vehicular manslaughter. Thereafter, the district court granted Salazar-Cabrera a new trial after concluding that an error in the jury instructions lowered the State's burden of proof for misdemeanor vehicular manslaughter. The case was remanded to the magistrate court for retrial of the misdemeanor. Salazar-Cabrera then filed an unsuccessful motion to dismiss asserting, in relevant part, that it was legally impossible for him to commit misdemeanor vehicular manslaughter as alleged in the amended charging document filed after his first trial. At the conclusion of the retrial, a jury again found Salazar-Cabrera guilty of misdemeanor vehicular manslaughter.

Salazar-Cabrera appealed to the district court, challenging various decisions by the magistrate court. The district court affirmed Salazar-Cabrera's judgment of conviction. Relevant to this appeal, the district court concluded that the magistrate court did not err by denying Salazar-Cabrera's motion to dismiss, by admitting evidence that he passed emergency ramps on the hill prior to the collision, or by rejecting jury instructions he proposed. The district court also concluded that admission of videos taken by a dashcam in Salazar-Cabrera's truck was harmless error. Salazar-Cabrera again appeals.

## II.

### STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

## III.

### ANALYSIS

Salazar-Cabrera asserts the following arguments challenging his conviction for misdemeanor vehicular manslaughter: (1) the magistrate court lacked subject matter jurisdiction;

2

(2) error in the denial of his motion to dismiss alleging his retrial would violate double jeopardy; (3) evidence showing he failed to use available "runaway truck ramps" to stop his truck violated I.R.E. 403; (4) the State failed to lay sufficient foundation for two videos leading up to the collision recorded by a dashcam in his truck; and (5) he was entitled to certain jury instructions. The State responds that Salazar-Cabrera waived or forfeited his double jeopardy arguments, evidence of the ramps was properly admitted, any error in admitting the dashcam videos was harmless, and the jury instructions as a whole were not misleading. We hold that Salazar-Cabrera has failed to show reversible error in regard to any of his arguments challenging his judgment of conviction for misdemeanor vehicular manslaughter.

## A.    Subject Matter Jurisdiction

We first address Salazar-Cabrera's argument that the magistrate court lacked subject matter jurisdiction over the misdemeanor vehicular manslaughter charge. Salazar-Cabrera asserts for the first time in his reply brief that the amended charging document,[1] filed following his first trial, "failed to charge a viable offense." According to Salazar-Cabrera, the amended charging document did not confer jurisdiction on the magistrate court because it was legally impossible to commit misdemeanor vehicular manslaughter in the manner alleged in the document, necessitating vacation of his conviction and dismissal of the case. We disagree with Salazar-Cabrera's assertion that the magistrate court lacked jurisdiction.

Generally, this Court will not address issues raised for the first time in a reply brief. *State v. Hawkins*, 159 Idaho 507, 517, 363 P.3d 348, 358 (2015). However, a challenge asserting that a charging document is jurisdictionally deficient is never waived and may be raised at any time, including for the first time on appeal. *State v. Stewart-Meyers*, 145 Idaho 605, 606, 181 P.3d 531, 532 (Ct. App. 2008). Whether a charging document conforms to the requirements of law and is legally sufficient is also a question of law subject to free review. *Id.* If an alleged deficiency is raised by a defendant before trial or entry of a guilty plea, the charging document must, in order to survive the challenge, set forth all facts essential to establish the charged offense. *Id.* When the information's jurisdictional sufficiency is challenged after trial, it will be upheld unless it is so

---

[1]    In response to various motions by Salazar-Cabrera, the State actually filed three amended charging documents--two amended informations and then an amended complaint. The language of the last amended information and complaint is substantially identical.

defective that it does not, by any fair or reasonable construction, charge the offense for which the defendant was convicted. *Id.* A reviewing court has considerable leeway to imply the necessary allegations from the language of the information. *Id.* In short, when considering a post-trial challenge to the jurisdictional sufficiency of an information, a reviewing court need only determine that, at a minimum, the information contains a statement of the territorial jurisdiction of the court below and a citation to the applicable section of the Idaho Code. *Id.*

The amended charging document alleging Salazar-Cabrera committed misdemeanor vehicular manslaughter, which was filed following his acquittal of the felony vehicular manslaughter charge in his first trial, alleged Salazar-Cabrera violated I.C. § 18-4006(3)(c) in "the County of Nez Perce, State of Idaho." The amended charging document was legally sufficient to confer subject matter jurisdiction because it alleged a specific offense committed in the State of Idaho. *See Stewart-Meyers*, 145 Idaho at 606-07, 181 P.3d at 532-33. Accordingly, Salazar-Cabrera's subject matter jurisdiction challenge fails.

**B.      Double Jeopardy**

Salazar-Cabrera contends that the magistrate court erred by denying his motion to dismiss because retrying him for misdemeanor vehicular manslaughter violated his constitutional rights against double jeopardy. According to Salazar-Cabrera, "misdemeanor vehicular manslaughter was the same criminal offense for which a jury acquitted [him] in the first trial," rendering his retrial for that offense a double jeopardy violation.

The State initially charged Salazar-Cabrera with felony vehicular manslaughter. Idaho Code Section 18-4006 defines vehicular manslaughter and provides, in pertinent part:

Manslaughter is the unlawful killing of a human being . . . without malice. . . .

> . . . .
> (3)      Vehicular--in which the operation of a motor vehicle is a significant cause contributing to the death because of:
> (a)      The commission of an unlawful act, not amounting to a felony, with gross negligence; or
> . . . .

4

> (c)     The commission of an unlawful act, not amounting to a
> felony, without gross negligence.[2]

A violation of subsection (a) is a felony and a violation of subsection (c) is a misdemeanor. *See* I.C. § 18-4007(3). Both provisions require the commission of an underlying "unlawful act." The initial information charging Salazar-Cabrera with violating I.C. § 18-4006(3) alleged reckless driving[3] as the underlying unlawful act. More specifically, the initial information alleged that Salazar-Cabrera committed "reckless driving with gross negligence, by driving carelessly and heedlessly, at a speed or in a manner as to endanger or likely to endanger any person or property."

At the conclusion of Salazar-Cabrera's first trial, the district court instructed the jury on the elements of both felony vehicular manslaughter and, as an included offense, misdemeanor vehicular manslaughter with reckless driving purportedly serving as the underlying unlawful act. Instruction No. 14, which labeled the offense "Vehicular Manslaughter with Gross Negligence," instructed the jury as follows:

> In order for [Salazar-Cabrera] to be guilty of Vehicular Manslaughter with
> Gross Negligence the State must prove each of the following:
>   1.     On or about the 31st day of March, 2018,
>   2.     in the State of Idaho,
>   3.     the defendant, Pompeyo Salazar-Cabrera, while operating a motor
>          vehicle committed the unlawful act of Reckless Driving; and
>   4.     the unlawful act was committed with gross negligence; and
>   5.     [Salazar-Cabrera's] operation of the motor vehicle in such unlawful
>          manner was a significant cause contributing to the death of [the
>          victim].
> You are further instructed that the unlawful act of Reckless Driving is
> committed when all of the following are found to exist:
>   1.     On or about 31st day of March, 2018,
>   2.     in the State of Idaho,
>   3.     the defendant, Pompeyo Salazar-Cabrera, drove or was in actual
>          physical control of a vehicle,

---

[2]     Pursuant to I.C. § 18-4006(3)(b), violations of I.C. §§ 18-8004 or 18-8006 (which criminalize driving under the influence of alcohol or intoxicating substances) can also support a vehicular manslaughter charge. Idaho Code Section 18-4006(3)(b) is not at issue in this appeal.

[3]     Pursuant to I.C. § 49-1401(1), a person commits reckless driving by driving "any vehicle upon a highway . . . carelessly and heedlessly or without due caution and circumspection, and at a speed or in a manner as to endanger or be likely to endanger any person or property."

4.	upon a highway, or upon public or private property open to the public, and

5.	[Salazar-Cabrera] drove the vehicle carelessly or heedlessly or without due caution and circumspection and at a speed or in a manner as to endanger or likely to endanger any person or property.

If you find that the State has failed to prove any of the above, then you must find [Salazar-Cabrera] not guilty. If you unanimously find that the State has proven each of the above, including each component of the unlawful act of Reckless Driving beyond a reasonable doubt, then you must find [Salazar-Cabrera] guilty of Vehicular Manslaughter with Gross Negligence.

Instruction No. 17, which labeled the included offense as "Vehicular Manslaughter without Gross Negligence," instructed the jury in a manner substantially identical to Instruction No. 14. The only substantive distinction between Instruction No. 14 and Instruction No. 17, is the absence of the element requiring that "the unlawful act was committed with gross negligence" in Instruction No. 17 (proffered as the included offense). Accordingly, both instructions permitted the jury to find that Salazar-Cabrera engaged in reckless driving by driving "carelessly or heedlessly or without due caution and circumspection and at a speed or in a manner as to endanger or likely to endanger any person or property." Ultimately, the jury found Salazar-Cabrera guilty of the included offense described as vehicular manslaughter without gross negligence (Instruction No. 17) but acquitted him of the offense described as vehicular manslaughter with gross negligence (Instruction No. 14).

Salazar-Cabrera moved for a new trial, arguing that the jury instructions prejudiced him because they "misstated the law and significantly diminished the conduct that was needed for the jury" to find him guilty by only requiring the jury to find that he acted "carelessly or heedlessly" rather than "carelessly and heedlessly" as required by I.C. § 49-1401(1) and as correctly alleged in the initial information. Salazar-Cabrera's motion for a new trial was granted and the case was remanded to a magistrate court for retrial of the misdemeanor vehicular manslaughter charge.

After Salazar-Cabrera was granted a new trial, the State filed an amended charging document that was substantially identical to the initial information, except that the amended charging document alleged he committed the unlawful act of reckless driving without gross negligence rather than with gross negligence. Specifically, the amended charging document alleged Salazar-Cabrera:

> [O]n or about the 31st day of March 2018, in the County of Nez Perce, State of Idaho, did, unlawfully, but without malice kill [the victim], a human being, by operating a motor vehicle in the commission of any unlawful act *without gross negligence*, to wit:  reckless driving, by driving carelessly and heedlessly, at a speed or in a manner as to endanger or likely to endanger any person or property, and where the operation of the motor vehicle was a significant cause contributing to the death of [the victim].

(emphasis added).  Subsequently, Salazar-Cabrera moved to dismiss the amended charging document, arguing that it was legally impossible for him to commit the offense of misdemeanor vehicular manslaughter as alleged.  Specifically, Salazar-Cabrera argued that gross negligence is an element of reckless driving and, therefore, cannot serve as the underlying unlawful conduct for misdemeanor vehicular manslaughter, which requires an unlawful act committed *without* gross negligence.  According to Salazar-Cabrera, because double jeopardy principles precluded the State from amending the alleged unlawful conduct underlying the misdemeanor vehicular manslaughter charge to cure this impossibility, the amended charging document had to be dismissed.  In addressing Salazar-Cabrera's motion to dismiss, the magistrate court construed his motion as presenting the argument "that double jeopardy applies because the terms 'carelessly and heedlessly or without due caution and circumspection' are equal to 'gross negligence.'"  The magistrate court rejected this argument and denied the motion to dismiss.

On intermediate appeal, Salazar-Cabrera's opening brief portrayed his motion to dismiss as being "based upon Double Jeopardy and Legal Impossibility."  In its decision on intermediate appeal affirming Salazar-Cabrera's judgment of conviction, the district court concluded that the denial of his motion to dismiss was not an abuse of discretion.  In support of this conclusion, the district court reasoned Salazar-Cabrera "asked for, and received a new trial on the consideration of whether he committed vehicular manslaughter without gross negligence.  When a defendant does so . . . double jeopardy principles do not prevent a second trial."

Salazar-Cabrera challenges the district court's ruling on intermediate appeal that he "waived his claim of double jeopardy" when he  "ask[ed] for and receiv[ed] a new trial."  The Double Jeopardy Clauses of the United States and Idaho Constitutions both provide that no person shall be twice put in jeopardy for the same offense.  *See* U.S. CONST. amend. V; IDAHO CONST. art. I, § 13.  These constitutional provisions are co-extensive, prohibiting a second prosecution for

7

the same offense after acquittal or conviction and multiple punishments for the same offense.[4] *See State v. McKeeth*, 136 Idaho 619, 624, 38 P.3d 1275, 1280 (Ct. App. 2001). The guarantee against retrial for the same offense after an acquittal "recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." *Currier v. Virginia*, ___ U.S. ___, ___, 138 S. Ct. 2144, 2151 (2018). However, the Double Jeopardy Clause is not "an insuperable obstacle to the administration of justice" in the absence of such oppressive practices. *Id.* Salazar-Cabrera's double jeopardy claim is based on the prohibition against multiple prosecutions for the same offense after acquittal. This protection arises only after the attachment and subsequent termination of jeopardy, generally accomplished by an acquittal or guilty verdict. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003) (observing that "once a defendant is placed in jeopardy for an offense [i.e., jeopardy 'attaches'], and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense").

In general, a defendant waives a double jeopardy objection when he seeks a new trial. *See State v. Mack*, 132 Idaho 480, 483 n.3, 974 P.2d 1109, 1112 n.3 (Ct. App. 1999). A defendant's consent to a new trial need not be explicit. An implicit agreement to a second trial forecloses "any double jeopardy complaint about it." *Currier*, ___ U.S. at ___, 138 S. Ct. at 2151. And this relinquishment of a double jeopardy defense need not be "knowing, voluntary, and intelligent." *Id.* Moving for a mistrial implicitly invites a second trial, foreclosing any double jeopardy challenge to it. *See United States v. Dinitz*, 424 U.S. 600, 609 n.11 (1976). A defendant who moves for a new trial, like a defendant who moves for a mistrial, implicitly agrees to a new trial and waives double jeopardy protections. Salazar-Cabrera's motion for a new trial constitutes implicit consent to being retried for misdemeanor vehicular manslaughter and "dispels any specter of double jeopardy abuse that holding two trials might otherwise present." *See Currier*, ___ U.S. at ___, 138 S. Ct. at 2151. Salazar-Cabrera's argument that he did not waive his double jeopardy

---

[4]     Salazar-Cabrera does not contend that the Idaho Constitution provides more protection than its federal counterpart. Therefore, the Court will rely on judicial interpretation of the Fifth Amendment to resolve Salazar-Cabrera's double jeopardy claim. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

challenge because "the crime charged during the retrial is the same exact charge for which [he] was acquitted by a jury" ignores that he consented to his retrial by filing a motion for a new trial based on instructional error associated with the crime for which he was convicted.

Likewise, Salazar-Cabrera's argument that he did not "waive" his double jeopardy challenge because he filed a motion for judgment of acquittal before moving for a new trial fails. Salazar-Cabrera fails to cite any authority for this proposition. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Moreover, Salazar-Cabrera did not appeal the denial of his motion for judgment of acquittal.

In sum, Salazar-Cabrera requested and received a new trial on the misdemeanor vehicular manslaughter charge for which he was convicted due to erroneous jury instructions on the elements of reckless driving. Accordingly, Salazar-Cabrera implicitly consented to a second trial with a jury *properly* instructed on the elements of misdemeanor vehicular manslaughter via reckless driving, waiving *any* double jeopardy complaint about a second trial for that charge regardless of the similarity of that charge to the felony of which he was acquitted. *See Currier*, ___ U.S. at ___, 138 S. Ct. at 2151.[5]

## C.      Evidentiary Rulings

Salazar-Cabrera next contends that the magistrate court committed two evidentiary errors. First, Salazar-Cabrera argues that the magistrate court erred by admitting evidence that he failed to use "runaway truck ramps" on the hill he descended just prior to the collision. Second, Salazar-Cabrera argues that State's Exhibit 82, consisting of two video clips captured by his dashcam that digitally displayed his speed leading up to the collision, was erroneously admitted. The State responds that evidence of the emergency ramps was properly admitted and that admission of Exhibit 82, the dashcam video with the speed display, was harmless. We hold that neither of Salazar-Cabrera's claims of evidentiary error entitle him to a new trial.

---

[5]      That Salazar-Cabrera also requests alternative relief in the form of a judgment of acquittal on the misdemeanor vehicular manslaughter charge when moving for a new trial does not affect the waiver analysis. Salazar-Cabrera did not appeal the denial of his request for a judgment of acquittal, accepting relief in the form of a retrial instead. The Double Jeopardy Clause, which protects against government oppression, does not relieve Salazar-Cabrera of the consequence of this voluntary choice. *See United States v. Scott*, 437 U.S. 82, 99 (1978).

### 1.     Evidence of runaway truck ramps

According to Salazar-Cabrera, because he was not legally required to use the emergency ramps, "the existence of the ramps and [his] failure to use any of the emergency ramps was of little to no probative value." Consequently, Salazar-Cabrera asserts that this evidence should have been excluded under I.R.E. 403. We disagree. Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. A trial court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Salazar-Cabrera moved to exclude evidence related to "runaway truck ramps"[6] positioned on the hill he descended just prior to the collision. Specifically, Salazar-Cabrera moved in limine to exclude evidence: (1) discussing the existence of emergency ramps; (2) that he should have or was required to use the emergency ramps; (3) that the fatal accident would not have happened but for his failure to use such emergency ramps; (4) that the failure to use one of the emergency ramps constitutes unlawful conduct; and (5) that the failure to use the emergency ramps is evidence of reckless driving or proof of vehicular manslaughter. The magistrate court granted the motion as it related to evidence indicating Salazar-Cabrera was required to use the emergency ramps or that failing to do so constituted unlawful conduct but denied the other relief requested. In reaching this result, the magistrate court noted that the evidence about the emergency ramps--excluding that indicating Salazar-Cabrera was obligated (by law or otherwise) to use an emergency ramp--had

---

[6]     Pictures admitted into evidence as exhibits depict these emergency ramps as long sand- or gravel-filled lanes that diverged from the main roadway on the hill Salazar-Cabrera was descending. The apparent purpose of these emergency ramps is to dissipate the kinetic energy of a semi-truck, stopping it safely.

already been found to satisfy the balancing test contained in I.R.E. 403 in prior orders addressing his previous motions in limine.

Even if Salazar-Cabrera lacked a legal duty to use an emergency ramp, it does not follow that evidence of the existence of the ramps or his failure to use them held little probative value. To the contrary, the district court on intermediate appeal observed that "the presence of escape ramps, which were built for the express purpose of providing vehicles a means to slow down if their brakes failed, is a fact and circumstance surrounding the accident and had probative value that exceeded the prejudicial value." Salazar-Cabrera has failed to show that the admission of this evidence violated the magistrate's discretionary weighing decision under I.R.E. 403.

### 2. State's Exhibit 82--daschcam video

Salazar-Cabrera argues that the magistrate court abused its discretion by admitting State's Exhibit 82, which consisted of two, 20-second video clips captured by the dashcam of Salazar-Cabrera's truck the day of the collision. In addition to depicting the road in front of the truck, the dashcam video clips also displayed the speed the truck was purportedly traveling. The first dashcam video clip showed Salazar-Cabrera traveling at approximately 60 mph down an unspecified portion of the hill prior to the collision. The second dashcam video clip shows Salazar-Cabrera running the stop sign at the bottom of the hill and colliding with another vehicle. Salazar-Cabrera contends the magistrate court erred by concluding State's Exhibit 82 was self-authenticating to overrule his foundational objection to its admission. Assuming without deciding that admitting State's Exhibit 82 was error, we hold any such error was harmless beyond a reasonable doubt.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The Idaho Supreme Court clarified the harmless error standard for an objected-to, non-constitutionally based error in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* at 674, 462 P.3d at 1138. The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

11

We begin with the probative force of the record excluding State's Exhibit 82. The State's theory of the case was that Salazar-Cabrera drove too fast down the hill, necessitating heavy breaking that led to "brake fade"[7] and his failure to stop at the bottom of the hill. In addition to State's Exhibit 82, the State presented testimony from another truck driver that Salazar-Cabrera passed while descending the hill. According to the other truck driver, he observed Salazar-Cabrera's truck closing in from behind with smoke billowing from underneath the trailer "like one of those stunt planes with smoke." The other truck driver testified that he estimated Salazar-Cabrera was traveling approximately 50 mph near the bottom of the hill.

Another driver who was traveling up the hill as Salazar-Cabrera was descending testified to observing a semi-truck matching the one driven by Salazar-Cabrera "coming down at a high speed, and smoke was rolling out the back." According to this driver, the trail of smoke continued up the hill for another "mile-and-a-half to two miles" from where he encountered the truck. This driver was sufficiently concerned about the truck's rate of speed that he stopped and grabbed his phone to call emergency services because he "thought [the truck] was going to either hit the truck ramp or crash on the corner." The driver then waited "there for a little while to listen to see if [the truck] was going to . . . wreck." Hearing nothing out of the ordinary, the driver continued to work without contacting emergency services.

The State's collision reconstruction expert opined that, based upon an examination of the brake system on Salazar-Cabrera's truck and information downloaded from the truck's event data recorder,[8] he failed to stop for the stop sign at the bottom of the hill because of brake fade. According to the collision reconstruction expert, a driver is "either going to have to apply the brakes and keep them on for a substantial period of time or pump them excessively" to develop brake fade. The collision reconstruction expert further opined that Salazar-Cabrera's "poor

---

[7]    The collision reconstruction expert called by the State testified that heavy breaking in a semi-truck causes the brake system to heat up, leading to "a real distinctive odor" followed by smoke and reduced braking effectiveness. This temporary phenomena resulting from overheated brakes, which dissipates as the brakes cool, is known as "brake fade."

[8]    The State's collision reconstruction expert testified that an "event data recorder" is a device that "captures vehicle data surrounding a preprogramed event" like situations where the truck slows to a sufficient degree over a one-second period or the truck's last stop.

12

braking strategy" on the hill (including taking the truck out of gear thereby eliminating the possibility of using the engine brake) "severely degraded" the braking ability of his truck. Consequently, Salazar-Cabrera entered the 35 mph speed zone preceding the stop sign traveling nearly 60 mph and was able to reduce his speed to about 33 mph a second before the collision.

Salazar-Cabrera asserts that State's Exhibit 82 "was critical" because the State "needed to prove that speed contributed" to the brake fade he experienced. According to Salazar-Cabrera, the portion of State's Exhibit 82 depicting him descending the hill prior to the accident is "the only evidence of [his] speed prior to the occurrence of brake fade." However, Salazar-Cabrera fails to explain how the jury could conclude his truck had yet to develop brake fade during any portion of State's Exhibit 82. To the contrary, the front-facing dashcam did not provide a vantage point from which a viewer could observe the truck's tires or smoke that may have been trailing from them. Moreover, the speed display in the video indicates Salazar-Cabrera was *accelerating*, which could support an inference that brake fade had already occurred.

More importantly, Salazar-Cabrera's characterization of State's Exhibit 82 as "critical" overstates its evidentiary value. The officer who obtained the dashcam videos testified that he did not know whether the digital speed indication displayed on them was accurate, diminishing the probative force of that aspect of the videos. Additionally, State's Exhibit 82 was partially cumulative of other evidence as the collision reconstruction expert had calculated Salazar-Cabrera's speed for the minute immediately preceding the collision using information from the truck's event data recorder. Furthermore, State's Exhibit 82 amounted to about 40 seconds of footage in total, and the State did not call attention to the speed display after the dashcam videos were published to the jury.

The collision reconstruction expert's passing reference to "a videotape where [Salazar-Cabrera] was halfway down the downgrade" traveling in the "realm" of 60 mph, does little to increase the probative force of the alleged error. The State did not have to prove that Salazar-Cabrera developed brake fade because he exceeded the posted speed limit. Rather, the jury could find Salazar-Cabrera committed the offense of reckless driving by driving carelessly and heedlessly at a speed or in a manner likely to endanger persons or property under the existing conditions. As discussed, the collision reconstruction expert testified that Salazar-Cabrera would not develop brake fade without applying his brakes for a substantial period of time or pumping

13

them excessively. Witnesses testified to observing Salazar-Cabrera traveling down a hill at unsafe speeds with his wheel brakes smoking for *miles* and his engine brake inoperable while passing multiple runaway emergency ramps he did not use before running a stop sign, resulting in a collision that killed another driver. In light of this evidence, the probative force of the partially cumulative State's Exhibit 82 is minimal compared to the evidence of Salazar-Cabrera's guilt and, therefore, admission of Exhibit 82 was harmless beyond a reasonable doubt.

## D. Jury Instructions

Finally, Salazar-Cabrera contends that the magistrate court erred by rejecting his proposed jury instructions: (1) defining gross negligence; (2) defining both reckless and inattentive driving; (3) indicating reckless driving requires more than ordinary negligence; and (4) on the defense of accident or misfortune. According to Salazar-Cabrera, the rejection of each instruction independently constitutes reversible error. We disagree.

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132; *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). In other words, a trial court must deliver instructions on the rules of law that are material to the determination of the defendant's guilt or innocence. *Mack*, 132 Idaho at 483, 974 P.2d at 1112. Each party is entitled to request specific instructions. *State v. Weeks*, 160 Idaho 195, 198, 370 P.3d 398, 401 (Ct. App. 2016). However, such instructions will only be given if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not "correct and pertinent" if it is: (1) an erroneous statement of the law; (2) adequately covered by the other instructions; or (3) not supported by the facts of the case. *Severson*, 147 Idaho at 710-11, 215 P.3d at 430-31; *Weeks*, 160 Idaho at 198, 370 P.3d at 401. This Court exercises free review over whether a jury was given proper instructions. *Id*.

### 1. Proposed Instruction No. 11

Consistent with the argument that gross negligence is an element of reckless driving, Salazar-Cabrera sought to have the jury in his second trial instructed regarding the definition of gross negligence. Specifically, Salazar-Cabrera requested that the magistrate court provide his proposed Instruction No. 11 to the jury, which mirrored the substance of Idaho Criminal Jury Instruction 342 and provided that "gross negligence means such negligence as amounts to a wanton, flagrant or reckless disregard of the consequences or willful indifference of the safety or

rights of others." The magistrate court rejected the proposed instruction without comment. On intermediate appeal, the district court affirmed the magistrate court's rejection of the proposed instruction, reasoning that "the jury was instructed as to what they needed to find to convict, that is whether Salazar-Cabrera drove carelessly and heedlessly or without due caution and circumspection." Thus, additionally giving "an instruction containing the definition of gross negligence would likely confuse the jury."

Salazar-Cabrera contends the rejection of his proposed Instruction No. 11 "essentially lightened the State's burden of proof and failed to identify all elements of the crimes charged." We disagree with this conclusory assertion. A trial court's obligation to instruct the jury necessarily includes providing instructions on the nature and elements of the crime charged. *Severson*, 147 Idaho at 710, 215 P.3d at 430. As discussed, the instructions given to the jury in Salazar-Cabrera's second trial on the elements of misdemeanor vehicular manslaughter via reckless driving track the language of I.C. § 49-1401(1). Giving instructions that mirror the language of the statute criminalizing the conduct charged is not error. *State v. Adamcik*, 152 Idaho 445, 477, 272 P.3d 417, 449 (2012). Therefore, the magistrate court did not err by refusing to instruct the jury on the definition of gross negligence as that term does not appear in I.C. § 49-1401(1).

### 2. Proposed Instruction No. 3

Salazar-Cabrera argues that the magistrate court erred by rejecting his proposed Instruction No. 3. That instruction defined the offenses of reckless driving and inattentive driving as follows:

> Any person who drives or is in actual physical control of any vehicle upon a highway, or upon public or private property open to public use, carelessly and heedlessly and at a speed or in a manner as to endanger or be likely to endanger any person or property, or who passes when there is a line in his lane indicating a sight distance restriction, shall be guilty of reckless driving.
>
> Inattentive driving shall be applicable in those circumstances where the conduct of the operator has been inattentive, careless or imprudent, in light of the circumstances then existing, rather than heedless or wanton, or in those cases where the danger to persons or property by the motor vehicle operator's conduct is slight.

The district court on intermediate appeal affirmed the magistrate court's refusal of this instruction, reasoning that the proposed instruction would have confused the jury and was unnecessary as Salazar-Cabrera was not charged with inattentive driving.

15

Salazar-Cabrera contends that the above instruction was a correct statement of the law that was supported by the evidence and its rejection "directly impeded [him] from putting on his theory of the case" that "the evidence was more supportive of the lesser offense of inattentive driving than reckless driving." According to Salazar-Cabrera, the proposed instruction "was important to [his] defense as it provided additional guidance in defining the quantum of culpable conduct" required to find him guilty of reckless driving. These arguments fail for the same reason as those supporting Salazar-Cabrera's request for an instruction on the definition of gross negligence.

As discussed, the magistrate court was obligated to instruct the jury in Salazar-Cabrera's second trial on the nature and elements of the crime charged and the magistrate court did so. Salazar-Cabrera was free to argue before the jury that his conduct did not rise to the level of reckless driving as defined in the instructions. Additional instructions distinguishing reckless driving from inattentive driving were unnecessary. Accordingly, Salazar-Cabrera's proposed Instruction No. 3 was adequately covered by the other instructions given in the second trial. Moreover, as the district court recognized on intermediate appeal, instructing on the elements of an offense Salazar-Cabrera was not charged with committing "would likely confuse the jury." Salazar-Cabrera has failed to show error in the rejection of his proposed Instruction No. 3.

### 3. Proposed Instruction No. 10

Salazar-Cabrera's argument that the magistrate court erred by rejecting his proposed Instruction No. 10 on the defense of misfortune or accident is similarly unavailing. Salazar-Cabrera's proposed Instruction No. 10 is based upon I.C. § 18-201 and reads:

> If you find that the defendant committed the acts or made the omissions charged, through misfortune or by accident, when it appears that there was not evil design, intention or culpable negligence then you must find the defendant not guilty.

The magistrate court rejected this proposed instruction without elaboration. However, on intermediate appeal, the district court indicated that "the record shows [the magistrate court's] likely reasons for not using" the proposed instruction. The district court further observed that the instructions given in Salazar-Cabrera's second trial "specifically required that the jury find that he drove carelessly and heedlessly at a speed likely to endanger person or property" to find him guilty of misdemeanor vehicular manslaughter by reckless driving. Thus, the jury could not find Salazar-Cabrera guilty of misdemeanor vehicular manslaughter without finding that his conduct

16

did not result from culpable negligence. Accordingly, Salazar-Cabrera has failed to show error in the rejection of his proposed Instruction No. 10 because it was adequately covered by other instructions.

### 4. Proposed Instruction No. 13

Salazar-Cabrera also argues that it was error to rejection his proposed Instruction No. 13, which reads: "the crime of Reckless Driving requires a finding [of] more than ordinary negligence." In rejecting Salazar-Cabrera's proposed Instruction No. 13, the magistrate court stated:

> [T]hat particular instruction is not going to be given . . . to the jury. The elements instruction which is in the Court's packet requires the State to show certain things beyond a reasonable doubt. And one of them is that the unlawful act was reckless driving.
> And so the State, obviously, has to establish that reckless driving beyond a reasonable doubt. You can argue anything you want in regards to the State has not been able to establish that, but I'm not giving that as an instruction.

On intermediate appellate review of the magistrate court's decision to reject Salazar-Cabrera's proposed Instruction No. 13, the district court observed:

> Salazar-Cabrera provides no legal authority verifying that his proposed instruction is a correct statement of the law. The jury was instructed that they were to determine if Salazar-Cabrera drove carelessly and heedlessly or without due caution and circumspection. Adding a comparison to ordinary negligence would only confuse the jury.

Salazar-Cabrera faults the rejection of his proposed Instruction No. 13 as resulting "in a failure to explain the required elements of the crime charged." We disagree. As the district court recognized, the jury in Salazar-Cabrera's second trial had to determine that he drove carelessly and heedlessly to find him guilty of misdemeanor vehicular manslaughter by reckless driving. This language tracks the text of I.C. § 49-1401(1), so it was not error to instruct the jury using that language. *See Adamcik*, 152 Idaho at 477, 272 P.3d at 449. Salazar-Cabrera was free to argue that, although "the braking strategy [he] employed was careless or imprudent given the circumstances of the steep grade," he had not driven carelessly *and* heedlessly. In sum, Salazar-Cabrera has failed to show that the rejection of his proposed Instruction No. 13 was error because it was adequately covered by other instructions given to the jury.

17

## IV.

## CONCLUSION

The amended information filed following Salazar-Cabrera's first trial was legally sufficient to confer subject matter jurisdiction upon the magistrate court. Salazar-Cabrera consented to a retrial by filing a motion for a new trial, thereby barring any double jeopardy challenge to his second trial. Salazar-Cabrera has failed to show error in the admission of evidence related to the emergency truck ramps and any error in the admission of recordings from his dashcam (State's Exhibit 82) was harmless. Furthermore, Salazar-Cabrera has failed to show error in the rejection of his proposed jury instructions because they were adequately covered by other instructions given to the jury. Accordingly, the decision of the district court, on intermediate appeal from the magistrate court, affirming Salazar-Cabrera's judgment of conviction for misdemeanor vehicular manslaughter is affirmed.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.